**Joseph SANDGATHE, Petitioner–Appellant,**

v.

**Manfred F. MAASS, Respondent–Appellee.**

**No. 01–35053.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2002.

Filed Dec. 20, 2002.

---

Bryan E. Lessley, Assistant Federal Public Defender, Eugene, Oregon, for the petitioner-appellant.

Kathleen Cegla, Assistant Attorney General, and Janet A. Klapstein, Assistant

**374**

Attorney General, Office of the Attorney General of the State of Oregon, Salem, Oregon, for the respondent-appellee.

Before: B. FLETCHER, O'SCANNLAIN and BERZON, Circuit Judges.

## OPINION

BERZON, Circuit Judge.

Joseph Sandgathe appeals the denial and dismissal of his writ of habeas corpus filed in district court. The writ sought to challenge two 1993 convictions in the Lane County Circuit Court.

In one case ("the Bryson case"), Sandgathe was convicted in a jury trial of assault in the second degree. That case arose from a trip Sandgathe took in October 1992 to the dentist, reminiscent of the dentist scene in "The Little Shop of Horrors"—but in reverse.

Sandgathe visited his dentist, Dr. Bryson, to have a tooth bridge removed and repaired. Prior to the bridge removal, petitioner was given a mixture of nitrous oxide and oxygen, and a local anesthetic, Xylocaine.

During the procedure, Dr. Bryson decided it was necessary to give petitioner another Xylocaine injection to stop his gums from bleeding. Sandgathe was concerned about the additional injection, but Dr. Bryson assured him that the procedure was standard. Sandgathe nonetheless became agitated, cursed, stood up, and repeatedly hit and kicked Dr. Bryson. Sandgathe then walked to the reception area and yelled at the receptionist. When Dr. Bryson asked Sandgathe to leave, Sandgathe grabbed Dr. Bryson around the neck.

Dr. Bryson thereupon warned that the police were on their way. In response, Sandgathe tried to ram Dr. Bryson's head through the office's front door, smashed Dr. Bryson's head between the door and wall, and threw Dr. Bryson outside, where he began beating and kicking Dr. Bryson again. Dr. Bryson suffered a broken tooth, numerous cuts, contusions, bruises, a broken rib, and a collapsed lung.

The second case ("the Robertson case") also resulted in a conviction for assault in the second degree, this time for a violent outbreak at a tavern in February 1993. Sandgathe approached Robertson, a patron in a tavern, and started talking to him. Robertson told the bartender, "you should 86 this guy. He is acting weird." Sandgathe then stood up and hit Robertson in the face and left. Robertson suffered a facial tripod fracture, left upper eyelid laceration, and nasal abrasion.

On April 15, 1993, Sandgathe was convicted by a jury in the Bryson case, and the trial court sentenced him to 22 months' imprisonment and 36 months post-prison supervision. The next day, Sandgathe changed his plea in the Robertson case to guilty. The court sentenced Sandgathe to 32 months' imprisonment and 36 months post-prison supervision, to run consecutively with the sentence imposed in the Bryson Case.

Sandgathe directly appealed both convictions but failed to raise any issues as to why his conviction should be reversed.[1]

---

1. Sandgathe's appellate counsel filed briefs pursuant to *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991). Under Oregon law, a *Balfour* brief, appropriate if counsel perceives no nonfrivolous issue for appeal, can consist of two parts: 1) a statement of facts and procedural history prepared and signed by appellate counsel; and 2) a statement of claims or

Both convictions were affirmed without opinion by the Oregon Court of Appeals. Sandgathe did not seek review by the Oregon Supreme Court.

In Oregon, "violations of a defendant's rights that occur after trial, or that require a further evidentiary hearing for their determination" are appropriately determined on post conviction review. *Kellotat v. Cupp*, 719 F.2d 1027, 1030 (9th Cir.1983). Sandgathe challenged both convictions in petitions for post-conviction relief. In both cases, the Marion County Circuit Court denied relief on the merits, the Oregon Court of Appeals affirmed the denial of post-conviction relief without opinion, and the Oregon Supreme Court denied review without opinion.

Sandgathe then filed a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. His writ alleges four grounds for relief:

- Ground One alleges that Sandgathe was denied constitutional due process in the Bryson case because he was incompetent to stand trial or enter a guilty plea as a result of medication he was taking. Petitioner conceded before the district court that Ground One is procedurally defaulted.
- Ground Two alleges that he was denied adequate assistance of counsel in the Bryson case. Sandgathe raises eight ineffective assistance of counsel claims, all involving counsel's alleged disregard for Sandgathe's medical and mental incapacity. For example, Sandgathe alleges that counsel failed to investigate and research his mental status at the time of the offense to determine whether he had a viable mental status defense. Sandgathe

conceded before the district court that the claims under Ground Two with regard to sentencing are procedurally defaulted. The district court reviewed and rejected on the merits the remainder of the claims under this Ground.

- Ground Three alleges that Sandgathe was taking a combination of prescription medications that rendered him incompetent to enter the guilty plea in the Robertson Case. The district court found this ground procedurally defaulted for failure to state federal due process claims to the state court on appeal from the denial of state post-conviction relief.

- Ground Four alleges ineffective assistance of counsel with regard to the guilty plea in the Robertson Case. Sandgathe argues that his attorney coerced him into pleading guilty. The district court reviewed and denied this claim on the merits.

Presented for our review on appeal are: the ineffective counsel claims in the Bryson case, except those related to sentencing (Ground Two); the incompetence to plead claim in the Robertson case (Ground Three); and the ineffective counsel claim in the Robertson case (Ground Four). We first conclude that the incompetence claim in the Robertson case (Ground Three) was not procedurally defaulted. But we reject that claim on the merits. We also reject on the merits the related claim for ineffective counsel in relation to the plea in the Robertson case (Ground Four). Finally, we reject on the merits the ineffective counsel claim in the Bryson case (Ground Two).

errors which is prepared and signed by the petitioner. 814 P.2d at 1080. In this instance, the first sections of the briefs on appeal included no factual statement, only a

very brief procedural summary, and Sandgathe did not submit over his own signature any claims of error or argument.

## DISCUSSION

### A. Standard of Review

■ The denial of a petition for writ of habeas corpus is reviewed de novo. *Dubria v. Smith,* 224 F.3d 995, 1000 (9th Cir. 2000) (en banc). Sandgathe's petition is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, "[s]tate court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence." *Pollard v. Galaza,* 290 F.3d 1030, 1033 (9th Cir.2002), *citing* 28 U.S.C. § 2254(e)(1).

### B. Procedural Default of the Incompetence to Plead Claim in the Robertson Case

■ In order to qualify for federal habeas review, a state prisoner must exhaust all available state remedies, either through direct appeal of his conviction or through collateral proceedings. Exhaustion occurs when the petitioner has given the state courts a full and fair opportunity to consider and resolve the federal claims. *See* 28 U.S.C. § 2254(b)(1)(A); *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

■ Procedural default and failure to exhaust are different concepts, *see Franklin v. Johnson,* 290 F.3d 1223, 1230 (9th Cir.2002), but both are relevant here. Both are reasons a federal court may be required to refuse to hear a habeas claim brought by a defendant convicted in state court. The practical difference between the two is that when a defendant merely fails to exhaust, he may still be able to return to state court to present his claims there. When a defendant's claim is procedurally defaulted, either the state court was presented with the claim but "declined to reach the issue for procedural reasons," or "it is clear that the state court would hold the claim procedurally barred." *Id.* (internal quotation marks and citation omitted).

■ A procedural default may be *caused* by a failure to exhaust federal claims in state court. *See, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."). That is what the state alleges happened here. In the state's view, Sandgathe did not give the state courts an adequate opportunity to consider his claims, and, because Oregon does not allow a second shot at habeas relief, the claims are now procedurally barred rather than merely unexhausted. *See* O.R.S. § 138.550(3) (requiring that all post conviction review claims be asserted in the original or amended petition unless they could not reasonably have been asserted therein). We conclude, to the contrary, that Sandgathe did exhaust his incompetence to plead claim, and that therefore the claim is not procedurally defaulted.

■ In his post-conviction petition, Sandgathe, it is true, did not frame his claim of incompetence to enter a plea in the Robertson case (Ground Three) in terms of any federal right. Ordinarily, "fairly presenting" a federal claim means that "the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is self-evident." *Lyons v. Crawford,* 232 F.3d 666, 668 (9th Cir.2000) (quotation marks and internal citation omitted).

But in this case, the post-conviction trial court expressly included federal constitutional claims in its ruling: "Petitioner's plea of guilty was made knowingly, volun-

tarily and intelligently ... In the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied any right guaranteed by either the United States Constitution or the Constitution of the State of Oregon."[2] Where a court has in fact ruled on a claim, there is no possibility of "friction between the state and federal court systems" caused by "the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state court's having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728 (alteration in original). In the analogous context of preserving federal claims in state court for federal question review in the United States Supreme Court, the Supreme Court abides by " 'the elementary rule that it is irrelevant to inquire ... whether a Federal question was raised in a court below when it appears that such question was actually considered and decided.' " *Orr v. Orr,* 440 U.S. 268, 274–75, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1978) (*quoting Manhattan Life Ins. Co. v. Cohen,* 234 U.S. 123, 134, 34 S.Ct. 874, 58 L.Ed. 1245 (1914)). Here, there is no point in asking whether a state court had a "full and fair opportunity to resolve federal constitutional claims," *O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728, when the state court in fact did so.[3] We conclude that the state trial court's decision precludes any exhaustion defense, at least regarding that level of decision.

The government contends, however, that even if there is no exhaustion problem with Sandgathe's incompetence to plead claim with regard to the post-conviction trial court, Sandgathe thereafter failed to meet the exhaustion requirement by neglecting to mention the federal constitution in an appeal to the Oregon Court of Appeals. We reject this contention, following the Supreme Court's decision in *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

*Ylst* instructs that, where an appellate court affirms a habeas decision without opinion, the following presumption applies: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803, 111 S.Ct. 2590. Absent "strong evidence" refuting this presumption, we must "look through" the Oregon Court of Appeals and Supreme Court's unexplained decisions to the post-conviction court's reasoned decision. *Id.*

The current record lacks the "strong evidence" required to refute this presumption. The appellate brief stated more than once, generally, that the trial court decision was in error and in no way indicated any waiver regarding the federal issues previously decided. The prior decision aside, the Oregon Court of Appeals should have understood that Sandgathe specifically raised a federal issue in his appellate brief with regard to the incompetence to plead claim. The brief ascribes as "Assignment of Error Number One" the con-

---

2. The trial court separately held that "[i]n the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel guaranteed by either the United States Constitution or the Constitution of the State of Oregon." The holding quoted in the text applied to the involuntary or coerced plea claim, not the ineffective assistance claim.

3. A similar rule applies in the administrative law context. *See Jasch v. Potter,* 302 F.3d 1092 (9th Cir.2002) (stating that when an administrative agency in fact reaches the merits of a claim, administrative remedies are exhausted).

tention that "The trial court erred when it decided Petitioner had not shown he was incompetent to stand trial and enter a plea of guilty." In the "Argument" section under that "Assignment of Error," Sandgathe did cite federal constitutional cases, although they were not at all on point, as they seemed to deal with effectiveness of counsel. Confused arguments or poor lawyering through inapposite federal citations is not the same as failing to raise an argument at all.[4]

Given these circumstances, we must apply the *Ylst* presumption: Because the post-conviction trial court explicitly ruled on the federal constitutional issues and there is no indication that the Court of Appeals did not, we presume that the subsequent mute affirmance by the Court of Appeals rested on the same grounds as the decision it was affirming.[5]

We conclude that Sandgathe properly exhausted his incompetence to plead claim.[6]

## C. The Incompetence to Plead Claim on the Merits

There is no need, however, to remand to the district court for resolution of the merits. Sandgathe's incompetence claim is an integral piece of another of his claims, the merits of which the district court did reach, namely, Sandgathe's claim that he suffered ineffectiveness of counsel in the Robertson case because counsel "coerced" him to change his plea to guilty (Ground Four). Sandgathe's theory for the claim that counsel coerced him to plead guilty hinges on the premise that he was incompetent to plead at the time. Sandgathe presented the ineffective assistance of counsel claim in his federal habeas petition this way:

> On the day of 4–16–93, a jury trial was scheduled for court to hear the case. Mr. Sandgathe, while in the courtroom, was coerced by his attorney . . . to plead guilty to 'make things better' . . . Mr. Sandgathe was prescribed medication by a doctor for five weeks prior to the two trials while locked up in the county jail. The psychotropic drugs Trilafon, Kamadrin, and Inderal, were administered to Mr. Sandgathe, causing hallucinations, having hypnotic effects, and resulting in mental confusion and disorientation. Mr. Sandgathe changed his plea from innocent to guilty while involuntarily intoxicated under psychotropic medication. Mr. Sandgathe's attorney . . . should have known what kind of mental state that Mr. Sandgathe was in. Mr. Sandgathe was actually temporarily

---

4. For the reasons stated in the text, the federal issues were adequately presented to the Oregon Court of Appeals in light of the prior decision on those issues. The reason given in the concurrence in the judgment for distinguishing *Ylst* is therefore inapposite.

5. Sandgathe did raise the federal constitutional issue regarding the guilty plea in his petition to the Oregon Supreme Court, arguing that the State Supreme Court should hear the case because "[t]rying someone who is not able to understand what is going on is a violation of the due process clause of the Fourteenth Amendment to the United States Constitution." We note that even if there had been no such explicit reference in the Petition for Review, there was an incorporation of the

Court of Appeals briefs, and the same *Ylst* analysis would require "looking through" the second level of mute decision as well as the first.

6. Before the district court, Oregon argued for an additional reason that Sandgathe's incompetence to plead claim was procedurally defaulted: that the claim should have been brought on direct appeal rather than in post-conviction proceedings. The district court did not address this contention, and the state does not raise it to us. We consider it waived. *See Franklin v. Johnson*, 290 F.3d 1223, 1229 (9th Cir.2002) (state's procedural default arguments may be waived).

insane, or involuntarily intoxicated during the change of plea. [Sandgathe's attorney] involuntarily coerced Mr. Sandgathe into a change of plea at the very last minute in the courtroom while waiting for the jury to arrive to start the trial. Mr. Sandgathe did not understand what a change of plea from innocent to guilty meant with all of the consequences involved in this decision.

In deciding the merits of this ineffective assistance of counsel claim, the district court recited the following finding of fact by the post-conviction trial court: "Petitioner presented no credible evidence to support his claim that he was unable to understand what he was doing at the change of plea hearing as a result of his taking prescribed medications."[7] The district court concluded, "based upon a thorough review of the record," that "petitioner has not met the burden of rebutting the presumption that the state post-conviction court's findings of fact are correct." Sandgathe challenges the district court's denial of his Robertson case ineffective counsel claim in the present appeal. So the district court actually decided the merits of Sandgathe's incompetence claim in the process of rejecting Sandgathe's related ineffective counsel claim, and Sandgathe has appealed the latter to us. We are therefore able to address the merits of both claims.

■ Sandgathe has offered no evidence for his asserted incompetence to plead, either in his state post-conviction proceedings or before the district court. Dr. Hayes met Sandgathe on March 30th, two weeks before he entered the guilty plea. Dr. Hayes was asked at deposition about that meeting: "At that time did he seem able to understand you?" Dr. Hayes re-

plied, "Oh yes, he could understand me, I thought." Dr. Hayes also spoke at deposition to the effects of Tegretol (though not to the combination of Tegretol, Kamadrin, and Inderal that Sandgathe claims he was taking at the time). Dr. Hayes stated: "I don't think—unless you are taking way, way too much that it's going to interfere with your ability to defend yourself in court."

Sandgathe gives us no reason to doubt the truth of the state post-conviction court's finding that he was competent at the time of his guilty plea. We therefore reject his incompetence claim on the merits.

### D. The Ineffective Counsel Claim Related to the Plea in the Robertson Case

As we have explained, Sandgathe's ineffective assistance claim in the Robertson case is essentially that in light of his incompetence, counsel was professionally irresponsible and coercive in allowing him to plead guilty. The key premise of this claim—that Sandgathe was incompetent at the time of the plea—is unsupported in the record. Sandgathe presents no other evidence that counsel coerced Sandgathe to plead. We therefore affirm the district court's denial of the ineffectiveness of counsel claim.

### E. The Ineffective Counsel Claim in the Bryson Case

We now turn to Sandgathe's ineffective assistance of counsel claim with regard to the Bryson case (Ground Two). Under AEDPA, a federal writ for habeas corpus will be granted if a state court decision was either 1) "contrary to, or involved an

---

7. This quote is from a Magistrate Judge's "Findings and Recommendation," which the district court adopted and incorporated.

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ "[W]e must first consider whether the state court erred; only after we have made that determination may we then consider whether any error involved an unreasonable application of controlling law within the meaning of § 2254(d)." *Van Tran v. Lindsey*, 212 F.3d 1143, 1155 (9th Cir. 2000). As in *Weighall v. Middle*, 215 F.3d 1058, 1060 (9th Cir.2000), "[t]he parties agree that *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the relevant 'clearly established federal law.'" In order for Sandgathe's ineffective counsel claim to prevail under *Strickland*, Sandgathe must show "that his counsel's performance fell outside a wide range of reasonableness and that he was prejudiced by that performance." *Weighall*, 215 F.3d at 1062.

Rather than presenting new arguments in favor of his ineffective counsel claims, Sandgathe's brief simply incorporated the arguments in his briefs to the post-conviction trial court and the Oregon Court of Appeals.[8] One of the arguments in those briefs with regard to the Bryson case is that trial counsel should have made an independent inquiry into whether Sandgathe's medications and mental condition prevented Sandgathe from "making intelligent, knowing, voluntary decisions about how to conduct his defense." The Bryson trial took place just before the plea discussed above. As we noted, Sandgathe presents no evidence to suggest he was incompetent at that time. The post-conviction court found that "Petitioner was able to aid and assist in his own defense in the underlying criminal proceeding," and this factual finding was noted by the district court. Sandgathe gives us no reason to doubt its truth.

■ Another of Sandgathe's arguments is that trial counsel did not investigate fully the effect that the combination of psychotropic drugs, pain-killers, and drugs administered by the dentist could have had on his mental capacity at the time of the assault. According to Sandgathe's habeas petition, "Trial Counsel completely failed to exercise professional judgment by neglecting to investigate, research and determine to what extent these circumstances [i.e., the combination of drugs he was taking] amounted to a defense, partial or total, to the charges ..."

We need not consider whether trial counsel's investigation of this issue was deficient, however, because this argument

8. This mode of presentation is an entirely improper way of presenting argument to this court. *See* Fed. R.App. P. 28(a)(9)(A) (stating that the argument section of the brief must contain "appellant's contention's and the reasons for them, with citations to the record and parts of the record on which appellant relies.") *See Rhode Island Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, *47 n. 6 (1st Cir.2002); *Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 n. 6 (4th Cir.1994); *cf.* Circuit Rule 28–1(b) (precluding incorporation by reference of various kinds of briefs, but not mentioning state court briefs). As we conclude that petitioner's arguments lack merit, we need not decide whether to consider the argument forfeited for inadequate presentation. *See Cray*, 33 F.3d at 396 n. 6; *Avol v. Secretary of Health & Human Servs.*, 883 F.2d 659, 661 (9th Cir. 1989) (fining counsel for violating a circuit rule regarding cross-referencing briefs but not refusing to hear the claim); *but see Rhode Island Dep't of Envtl. Mgmt.*, 304 F.3d 31, 47 n. 6 (considering argument raised only by reference to another brief forfeited). While we have chosen to address this issue on the merits, future litigants would be well advised to avoid this practice.

fails at the prejudice prong of *Strickland.* To demonstrate prejudice, Sandgathe must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Franklin v. Johnson,* 290 F.3d 1223, 1233 (9th Cir.2002) (internal quotation marks and citation omitted). Sandgathe presents no evidence to this court, and we find none in the record, to support the claim that the combination of drugs he was taking altered his mental capacity to the degree that would give rise to a defense on the merits. Even assuming Sandgathe's lawyer was deficient, we have no reason to conclude that the outcome of Sandgathe's trial would have been any different with a lawyer who fully investigated the drug issue.

Finally, Sandgathe argues that his lawyer deficiently failed to investigate the possibility of a mental health defense based on Sandgathe's psychiatric condition more generally, independent of drugs, and that this failure to investigate constituted ineffective assistance of counsel. Though this claim presents a closer question, we conclude that, like Sandgathe's psychotropic drug claim, this claim fails *Strickland's* prejudice prong.

■ Sandgathe's counsel stated in his deposition that he investigated and rejected on tactical grounds the possibility of a mental health defense. Counsel did meet with Dr. Hayes, a psychiatrist who had treated Sandgathe. Sandgathe points out, however, that Dr. Hayes diagnosed Sandgathe with various mental disorders such as depression, pre-schizophrenia, and a "mixed personality disorder." At one point before the trial in the Bryson case, Dr. Hayes told Sandgathe's counsel that it was possible that Sandgathe's mental illness contributed to the assault. Dr. Hayes explained that she was not a forensic psychiatrist but referred Sandgathe's counsel to three doctors who were. Sandgathe's counsel did not follow up with the references.

Sandgathe also points to a note in the records of an attorney who represented Sandgathe in a suit for social security benefits. The note reports a conversation with a Dr. Green, who stated that Sandgathe was "seriously mentally ill" and encouraged a more thorough psychiciatric evaluation. Sandgathe's trial counsel stated in his deposition that he did not recall seeing Dr. Green's note, although he did have access to the social security lawyer's records. The post-conviction court found that, "Trial counsel reviewed the medical records and other documents in the files of Drew Johnson, an attorney representing petitioner in other matters." Given this evidence and finding, we conclude that counsel's failure to follow up with forensic psychiatrists as he was advised and to further explore the possibility of Sandgathe's general mental health defense constituted deficient lawyering under the first prong of *Strickland. See Franklin,* 290 F.3d at 1236 ("These facts should have led counsel, at a minimum, to investigate the *possibility* of meeting the applicable legal standard . . . .") (emphasis in original).

The claim for ineffective assistance of counsel in the Bryson case nonetheless fails the prejudice prong of *Strickland.* We are not convinced that if Sandgathe's lawyer *had* presented an insanity defense based on his general mental health, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Franklin,* 290 F.3d at 1233 (internal quotation marks and citation omitted).

■ The Oregon criminal code defines its insanity defense this way:

(1) A person is guilty except for insanity if, as a result of mental disease or defect

at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

2) . . . the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder.

O.R.S. § 161.295. Sandgathe would therefore have had to show that he was afflicted with more than a personality disorder and that he lacked either the capacity "to appreciate the criminality of [his] conduct" or the capacity "to conform [his] conduct to the requirements of law." *Id.* There is no evidence anywhere in the record of the various proceedings establishing that if counsel had properly investigated, he could have shown that Sandgathe's mental state at the time of the crime met the standard.

The strongest evidence in Sandgathe's favor in the record are a few statements by Dr. Hayes during her deposition in the post-conviction proceeding. Dr. Hayes stated that although she had previously thought otherwise, she believed, on review of the record, that Sandgathe "may have an intermittent explosive disorder." Dr. Hayes stated that this disorder "interferes with [a patient's] ability to stop" himself from committing violent acts, and later that the disorder "interferes with [a patient's] ability to control—or [a patient's] desire to control" their violent actions. These statements seem to speak directly to a defendant's capacity "to conform [his] conduct to the requirements of law." O.R.S. § 161.295.

Intermittent Explosive Disorder is listed in the Diagnostic and Statistical Manual of

Mental Disorders ("DSM"). The disorder is defined therein as follows: "Individuals with this Impulse–Control Disorder recurrently fail to resist impulsive aggressive destruction of property or assault of other persons far in excess of what might be considered appropriate with respect to any precipitating event." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.1994).[9] *See Osborn v. Psychiatric Sec. Review Bd.*, 325 Or. 135, 934 P.2d 391, 396 (1997) (interpreting the Psychiatric Security Review Board's definition of "mental disease" by reference to the DSM: "The DSM . . . provides clinicians and research investigators with a common language with which to communicate about the disorders for which they have professional responsibility.") (internal quotation marks and citation omitted); *S.M. v. J.K.*, 262 F.3d 914, 920–22 (9th Cir.2001) (referring to DSM for a statement of current psychiatric knowledge).

 Unfortunately for Sandgathe, Oregon has excluded just such disorders from qualification as insanity defenses. Section 161.295(2) states in relevant part: "the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." Intermittent Explosive Disorder is characterized as a "fail[ure]" to resist impulsive aggressive destruction of property or assault of other persons"— both of which constitute criminal conduct. *See also Kramer v. United States*, 579 F.Supp. 314, 318 (D.Md.1984) (referring to Intermittent Explosive Disorder and observing that as: "A condition that is difficult to diagnose and can explain away any kind of antisocial behavior could create

9. The highest state court decision in Sandgathe's case—the Oregon Court of Appeals' affirmance of the post-conviction trial court's denial of relief—was in 1998. So the latest DSM, from 1994, is relevant.

havoc, especially with the insanity defense."); *U.S. v. Lewis*, 34 M.F. 745 (N.M.Ct.Crim.App.1991) ("State courts have treated intermittent explosive disorder as a nonpsychotic disorder and not amounting to insanity.") (citations omitted).

In addition, Dr. Hayes indicated when Sandgathe's counsel first spoke to her that she is not a forensic psychiatrist and not, therefore, qualified to make a determination about insanity for criminal defense purposes. Dr. Hayes' isolated statements are not enough to overcome our deference to the state court's findings of fact. Those findings include: "Petitioner failed to meet his burden of proof in this proceeding to demonstrate that he had any reasonable mental defense to the underlying charges available to him at the time of trial." Because the record does not support a finding of prejudice, we reject Sandgathe's ineffective counsel claim in regard to a psychiatric health insanity defense in the Bryson case. Since we do not find a constitutional violation under *Strickland*, we need not reach the question of whether such violation was contrary to or an unreasonable application of Supreme Court law under AEDPA. *See Van Tran*, 212 F.3d at 1157.

### Conclusion

We find that the district court erred in holding Sandgathe's incompetence claim procedurally defaulted, but we affirm the district court's denial of that claim because the claim is meritless. We also affirm the district court's denial of Sandgathe's claims for ineffective assistance of counsel.

AFFIRMED.

O'SCANNLAIN, Circuit Judge, concurring in the judgment:

While I concur in the result reached by the court, I cannot join Part B of its opinion which concludes that the district court erred in holding that Sandgathe's incompetence-to-plead claim was procedurally defaulted.

The court's opinion cites the Supreme Court's holding in *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1990), in support of its conclusion that "[b]ecause the post-conviction trial court explicitly ruled on the federal constitutional issues and there is no indication that the Court of Appeals did not, we presume that the subsequent mute affirmance by the Court of Appeals rested on the same grounds as the decision it was affirming." Maj. Op. at 378. There are two problems with reliance on *Ylst*, one factual and the other legal.

First, as the opinion notes, "Sandgathe ... did not frame his claim of incompetence to enter a plea ... in terms of any federal right." Maj. Op. at 376. I cannot pretend to understand why this fact does not end our inquiry and compel the conclusion that Sandgathe, by failing to make a *federal* constitutional claim in state court, is barred from raising it in federal court. Any other conclusion flies in the face of our clear holding that "the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts." *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir.2000). Undeterred by this explicit requirement, the court nevertheless concludes that the Oregon Court of Appeals ruled on Sandgathe's incompetence-to-plead claim. The court, then, would have us believe—and indeed *presume*—that the Oregon Court of Appeals has ruled on an issue that both the court and the petitioner himself admit was never actually presented to it.

Second, the court's reliance on *Ylst* to overcome the inconvenient fact of Sandgathe's failure to present his claim is mis-

placed. *Ylst* does indeed hold that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803, 111 S.Ct. 2590. But rather than compelling the conclusion reached by the court here, reliance on the *Ylst* decision begs the question we must decide—namely, whether Sandgathe *actually presented* his incompetence-to-plead claim to the Oregon Court of Appeals. *Ylst* allows federal courts to "look through" unreasoned summary affirmances to determine "[i]f the last state court *to be presented* with a particular federal claim reache[d] the merits." *Id.* at 801, 111 S.Ct. 2590. Thus, before a federal court can engage in the practice of "looking through" unexplained orders to the last reasoned decision, the federal court must first ensure that the claim was actually presented to the state courts. The presentation of the claim, therefore, is a prerequisite to the application of *Ylst's* presumption. Where, as here, the petitioner failed to present a federal constitutional claim to the Oregon Court of Appeals, that court cannot be said to have ruled on such claim—even if it affirmed a trial court ruling that *did* consider the federal claim. To hold otherwise is inconsistent with clear Supreme Court precedent. *See Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.") *and Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) ("We emphasize that the federal claim must be fairly presented to the state courts.... Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.").

Accordingly, I must decline to join Part B of the court's opinion and concur only in the judgment.