**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeffrey Dean HOWARD, Defendant–Appellant.**

**No. 02–16228.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2004.

Filed Aug. 25, 2004.

---

David B. Koch, Neilsen, Broman & Koch, PLLC, Seattle, WA, for the defendant-appellant.

Helen J. Brunner, Assistant United States Attorney, Seattle, WA, for the plaintiff-appellee.

Before: D.W. NELSON, KLEINFELD and FISHER, Circuit Judges.

FISHER, Circuit Judge:

When Jeffrey Dean Howard pled guilty in federal district court, he was under the influence of a prescribed narcotic painkiller due to severe leg injuries from a motorcycle accident and consequently, he claims, did not fully understand the nature and consequences of his plea agreement. Howard appeals the district court's denial of his 28 U.S.C. § 2255 habeas petition, arguing that his counsel's performance was constitutionally ineffective in permitting him, while incompetent, to acquiesce in a plea agreement he had seen for the first time just before he agreed to plead guilty.

Because there is no dispute that Howard was taking powerful narcotic drugs that could have dulled his mental faculties and because he has alleged specific, credible facts in support of his ineffective assistance of counsel claim, we conclude that the district court should have permitted Howard to develop these claims more fully in an evidentiary hearing. We have jurisdiction under 28 U.S.C. § 2253, and we reverse and remand.

## Factual and Procedural Background

In October 1998, Pierce County Sheriff's deputies discovered a clandestine methamphetamine-manufacturing laboratory at a house Howard shared with his co-defendant Michael Higgs in Puyallup, Washington. Officers found Howard inside a crawl space under the house, along with a cooler containing methamphetamine and cocaine.

Howard was charged on December 10, 1998 with five counts by a superseding indictment: (1) conspiring to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846; (2) establishing a drug manufacturing operation in violation of 21 U.S.C. § 856(a)(1), (b); (3) manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); (4)

possessing a listed chemical with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(1); and (5) possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

On February 4, 1999, the district court heard Howard's motion to suppress evidence, during which Howard and two government witnesses testified.[1] The district court denied the motion.

Howard's trial was set to begin on February 8. That morning, Howard's attorney presented him with a plea bargain, which Howard claims not to have seen until then and under which he would plead guilty to counts 1, 2, 3 and 5 of the superseding indictment. The plea was expressly conditioned on Howard's right to appeal from the district court's denial of Howard's motion to suppress. The jury was waiting in case Howard declined the government's offer. At the time, Howard was experiencing pain as a result of a leg injury, for which he had undergone several surgical procedures and was taking a prescribed narcotic pain killer. Howard's use of the narcotic drug surfaced during the colloquy at the plea hearing:

COURT: As you sit here this morning, are you under the influence of or affected in any way by any alcoholic beverage or narcotic drug of any kind?

HOWARD: No.

COURT: You kind of hesitated.

HOWARD: Well, I am under a narcotic drug, but that's for my pain medication.

COURT: What do you take?

HOWARD: Percocet.

COURT: Doctor's order?

HOWARD: Yes.

COURT: That's pretty tough stuff; isn't it?

HOWARD: The pain I am going through is pretty tough.

COURT: That's why you are getting Percodan; isn't it? Other than that, any others?

HOWARD: No, sir.[2]

The district court did not inquire further regarding the drug or its effects and accepted Howard's plea. On June 18, 1999, the district court sentenced Howard to 292 months of imprisonment. Howard later appealed the denial of his motion to suppress, and we affirmed. *See United States v. Howard*, No. 99–30233, 2000 WL 728234 (9th Cir. May 22, 2000) (unpublished).

On March 23, 2001, Howard filed a *pro se* § 2255 habeas petition, raising several grounds, including his present ineffective assistance of counsel claim. On August 27, 2001, Howard sought an evidentiary hearing on the ineffective assistance of counsel claim. The district court denied the § 2255 petition without holding an evidentiary hearing and denied a certificate of appealability in May 2002.

Howard thereafter filed a timely notice of appeal. We granted a certificate of appealability on the ineffective assistance of counsel claim and appointed counsel for Howard.

---

**1.** We take judicial notice of these facts about the suppression hearing from the district court record in the underlying criminal case. Fed.R.Evid. 201; *see United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980) (stating that a court may take judicial notice of court records in another case).

**2.** Because Howard identified the drug as Percocet, and the court identified it as Percodan,

we shall refer to the drug as "Percocet/Percodan." As discussed *infra*, the two drugs contain the same active ingredient, oxycodone, an opioid with attributes similar to morphine. The two medications differ in that Percocet also contains acetaminophen, whereas Percodan contains aspirin. PHYSICIAN'S DESK REFERENCE 1245–46 (2004).

## Discussion

### I.

 Howard seeks an evidentiary hearing on his claim that his counsel was ineffective in permitting him to plead guilty while Howard was under the adverse effect of Percocet/Percodan, a narcotic drug.[3] To demonstrate that the district court erred in not granting an evidentiary hearing, (1) Howard must allege specific facts which, if true, would entitle him to relief; and (2) the petition, files and record of the case cannot conclusively show that he is entitled to no relief. 28 U.S.C. § 2255;[4] *see also United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir.2003). A claim must be "so palpably incredible or patently frivolous as to warrant summary dismissal" in order to justify the refusal of an evidentiary hearing. *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir.2003) (quoting *United States v. Schaflander*, 743 F.2d 714, 717(9th Cir.1984)).

Howard must therefore have alleged that counsel's permitting Howard to plead guilty was outside the wide range of professionally competent assistance and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Further, the petition, files and record must not conclusively foreclose such a claim. The district court denied Howard's claim because it found that "the record clearly shows that the defendant was competent to plead guilty and that his counsel advocated appropriately on his behalf at sentencing." The district court thus made findings regarding (1) Howard's competency to plead and (2) his counsel's professional performance. We address each in turn.[5]

### A. Howard's Competency to Plead Guilty

To establish that his counsel provided ineffective assistance in light of Howard's

---

**3.** The COA certified the merits of Howard's ineffective assistance of counsel claim, rather than whether the district court erred in denying Howard's motion for an evidentiary hearing. Because we must resolve Howard's contention that the district court erred in not granting an evidentiary hearing before determining the merits, we assume that the COA encompasses his claim challenging the denial of the evidentiary hearing. *See Tillema v. Long*, 253 F.3d 494, 502 n. 11 (9th Cir.2001) (treating as certified a question regarding the meaning of language within 28 U.S.C. § 2244(d)(2) because the question "clearly is comprehended" in the certified issue); *Jones v. Smith*, 231 F.3d 1227, 1231 (9th Cir.2000) ("[I]n cases where a district court grants a COA with respect to the merits of a constitutional claim but the COA is silent with respect to procedural claims that must be resolved if the panel is to reach the merits, we will assume that the COA also encompasses any procedural claims that must be addressed on appeal.").

**4.** The Judicial Code describes § 2255 petitions as "motions." 28 U.S.C. § 2255 ("Unless the *motion* and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing ....") (emphasis added). For ease of reference, however, we utilize the popular terms "petition" and "petitioner" here and elsewhere.

**5.** We do not address whether Howard's plea should be vacated because of his alleged incompetency or because the district court may not have sufficiently inquired into his competency; these claims are outside the scope of the COA and were not argued before us. The only issue on appeal is the indirect claim that Howard's counsel's performance fell below a reasonable professional standard by permitting Howard to plead guilty when incompetent.

alleged incompetency, Howard must first demonstrate that he was indeed incompetent to plead guilty. *See Sandgathe v. Maass,* 314 F.3d 371, 379(9th Cir.2002) (affirming district court's denial of defendant's ineffective assistance of counsel claim because defendant had offered no evidence for his asserted incompetence to plead guilty as a result of taking psychotropic drugs).

■ Competence is defined as the ability to understand the proceedings and to assist counsel in preparing a defense. *See Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); *see also Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). "When analyzing competence to plead guilty, we look to whether a defendant has 'the ability to make a reasoned choice among the alternatives presented to him.' " *Miles v. Stainer,* 108 F.3d 1109, 1112 (9th Cir.1997) (quoting *Chavez v. United States,* 656 F.2d 512, 518 (9th Cir.1981)). This standard is no higher than the *Dusky* standard for competence to stand trial. *Id.* (citing *Godinez,* 509 U.S. at 402, 113 S.Ct. 2680).

Howard argues that the Percocet/Percodan rendered him incompetent to make a reasoned judgment about whether to accept the guilty plea offer, and his lawyer should not have allowed him to do so. In evaluating whether Howard has set forth enough to warrant an evidentiary hearing on his claim and whether the record rebuts his claim, we are guided by several cases in which § 2255 petitioners moved to set aside their convictions on voluntariness grounds, claiming incompetence due to the ingestion of drugs before pleading guilty. *See, e.g., Sasser v. United States,* 452 F.2d 1104, 1106(9th Cir.1972) (affirming district court's denial of § 2255 petition without holding a hearing); *Lopez v. United States,* 439 F.2d 997, 999–1000 (9th Cir.

1971) (reversing and remanding for evidentiary hearing). Although these cases involved the direct issue of competence to plead guilty rather than an indirect claim of ineffective assistance of counsel, they are instructive as to what Howard must allege to establish that he was incompetent, a predicate to demonstrating that his counsel was ineffective.

In *Lopez,* the petitioner alleged that the prison authorities had given him a prescribed chemical cocktail consisting of phenobarbitol, dilantin and musline on the day of the plea. 439 F.2d at 999. He claimed that consequently he was "docile and more prone to the suggestions put to" him by counsel, felt "numb and stuporous" and was "unable to fully appreciate" his acts. *Id.* The district court denied this claim without hearing, relying on a psychiatrist's report, the transcript of the plea hearing at which the defendant was examined "with great care," an affidavit from trial counsel stating his belief that Lopez was competent and the trial judge's personal observations of the petitioner at the time of the plea. *Id.* at 998. We reversed and remanded for an evidentiary hearing, concluding:

> Neither the psychiatrist's report, nor counsel's affidavit, nor the record of the arraignment, plea and sentence, nor the court's personal observation of Lopez at plea can be taken as conclusively showing that Lopez is entitled to no relief. They are evidentiary, but not conclusive.
>
> *Id.* at 1000(citations omitted).

In contrast, the petitioner in *Sasser* "made the bald assertion" that he had been under the influence of Librium, a tranquilizer, at the time he entered the guilty plea and that he answered the court's questions in the colloquy "the way he was instructed to" by defense counsel because of the tranquilizer's effects. 452 F.2d at 1105–06. We looked to the "case-by-case" rule in

other circuits that a hearing is not required where no evidentiary facts are alleged to support bald allegations of incompetence, but that a hearing is required where the petitioner raises detailed and controverted issues of fact. *Id.* at 1106 (citing, *inter alia, United States v. Miranda,* 437 F.2d 1255, 1258 (2d Cir.1971)). Applying this rule, we concluded that an evidentiary hearing was not required because Sasser had not alleged facts indicating how he could have received the tranquilizer while in custody.

The First Circuit has adopted a similar rule in the context of waiver of the right to be present at trial, relying on our ruling in *Sasser.* *See Dziurgot v. Luther,* 897 F.2d 1222, 1226 (1st Cir.1990) (per curiam) ("[W]here a petitioner's allegations of drug-induced waiver are conclusory or inherently incredible, certainly the district judge need not incur the time and expense of further proceedings. In that situation the judge has the discretion to dismiss the petition without a hearing based on the judge's personal recollection that the waiver appeared knowing, intelligent and voluntary." (citing *Sasser,* 452 F.2d at 1104, 1106)). Dziurgot claimed that his waiver was not knowingly, intelligently and voluntarily made because he was "under the influence of serious prescribed pain-killing drugs, Percodan and Demerol," at the time of the waiver. *Id.* at 1223. The First Circuit noted that Dziurgot's allegations were "by no means conclusory, or inherently incredible"—particularly because there was no dispute that Dziurgot was taking the prescribed painkillers at the time of his waiver. *Id.* at 1225. It also held that the district court could not rely "almost solely" on its own observations of Dziurgot to reject his claims and thus remanded for an evidentiary hearing. *Id.* at 1225–26.

These decisions suggest that bald, conclusory or inherently incredible assertions of drug use do not require an evidentiary hearing, but once a petitioner asserts a more detailed claim, about which there are controverted facts, an evidentiary hearing must be granted. We now make explicit what is implicit in *Sasser* and *Lopez.* When a § 2255 petitioner's claim of incompetence due to the ingestion of drugs is conclusory or inherently incredible, a district court has the discretion to dismiss the petition without a hearing. When the allegations move beyond bald, conclusory or incredible assertions, however, a hearing is required unless the petition, files and record conclusively demonstrate that the petitioner was competent to plead guilty. Specific, credible evidence that an individual was under the influence of powerful narcotic drugs suffices to move a claim beyond a bald assertion of incompetence. *See Dziurgot,* 897 F.2d at 1225.

Here, as in *Dziurgot,* there is no dispute that Howard was under the influence of a strong painkiller during his plea hearing. Howard told the district judge during his plea hearing that he was taking Percocet/Percodan, which the judge recognized was "strong" medication. Howard further explained before the district court, and again on appeal, that he was taking the drug to relieve the pain he was suffering after two surgical procedures resulting from severe leg injuries he sustained during a motorcycle accident. Clearly, Howard has alleged "facts indicating how he came to be under the influence of drugs at the time of his plea." *Sasser,* 452 F.2d at 1106.

Moreover, Howard alleged under oath in his § 2255 petition that he was "incapable of understanding the nature and consequences of his plea" because he was "under the influence of a narcotic drug." He further elaborated in his initial memoran-

dum in support of his petition that because of his ingestion of Percocet/Percodan, he suffered from "mental clouding," was so befuddled he was unable to count, was "incoherent" and "almost devoid of sensible meaning" in his speech, was not "in full possession of his mental faculties," was "narcoticized" and "did not fully understand the nature and consequences of his agreement."[6] These allegations, if true, would establish that Howard was not competent and they are not conclusory or inherently incredible. Thus they are sufficient to state a claim.

We next turn to whether the petition, files and record conclusively disprove Howard's claim of incompetency. The district court found that the record demonstrated Howard's competence. This finding presumably was based upon the court's review of the record of the plea hearing and its observations of Howard during the plea colloquy. The record does not conclusively establish that Howard was competent, however.

■ First, Howard said then and alleges now that he had taken Percocet/Percodan. The district court made no adverse finding suggesting that he had not taken some amount of the narcotic painkiller. Both Percocet and Percodan contain the active ingredient oxycodone, an opioid with attributes similar to morphine and which may impair the mental and physical abilities required for the performance of potentially hazardous tasks. PHYSICIAN'S DESK REFERENCE 1245–46 (2004).[7] The most frequently observed adverse reactions include light-headedness, dizziness, sedation, nausea and vomiting; other adverse reactions include euphoria and dysphoria. *Id.* at 1246. It is at least arguable that a normal dose leading to some of these reactions would have seriously interfered with Howard's ability to make a reasoned choice among the alternatives presented to him. *See Miles,* 108 F.3d at 1112; *Dziurgot,* 897 F.2d at 1225. The district court—although acknowledging the "pretty tough" nature of the drug—did not inquire about the dosage of Percocet/Percodan, when Howard had taken it, whether Howard had mixed the Percocet/Percodan with non-narcotic drugs and, most importantly, its effects on Howard's competence. Absent such information, we cannot conclusively determine whether or not the Percocet/Percodan adversely affected Howard's competency to plead guilty.

Howard's behavior at the hearing—to which the government points as conclusively demonstrating Howard's competency—does not resolve the question. The hearing transcript reveals Howard at times appearing to be as befuddled as he now claims to have been; at others, he

6. Howard, who proceeded *pro se* in the district court, did not file affidavits in support of this initial memorandum or a subsequent reply memorandum, but the government has not challenged the sufficiency of Howard's allegations on this ground. We therefore do not address whether Howard's unsworn allegations are properly considered in determining his right to an evidentiary hearing. We do note that Howard's § 2255 petition was properly "signed under penalty of perjury by the petitioner." *See* Rule 2(b) of the Rules Governing Section 2255 Proceedings. His sworn allegations are neither bald nor incredible assertions and are supported by the uncontested fact that Howard was under the influence of Percocet/Percodan at the plea hearing. His unsworn memoranda merely augment those allegations.

7. We take judicial notice of these medical facts regarding Percocet and Percodan, which Howard has raised in his memorandum on appeal. *See Lolli v. County of Orange,* 351 F.3d 410, 419 (9th Cir.2003) ("Well-known medical facts are the types of matters of which judicial notice may be taken.") (quoting *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan,* 64 F.3d 1389, 1395 n. 2 (9th Cir.1995)).

seems to have been in full possession of his faculties. We thus cannot say on the basis of the hearing transcript that Howard was competent to enter a guilty plea. Nor is the trial judge's recollection of a petitioner's performance at a plea hearing conclusive in determining whether the petitioner was competent to enter a plea. *See Sanders v. United States,* 373 U.S. 1, 20, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("That the judge may have thought that [petitioner] acted with intelligence and understanding in responding to the judge's inquiries cannot 'conclusively show,' as the statute requires, that there is no merit in his present claim."); *see also Lopez,* 439 F.2d at 1000 (holding that court's personal observation of § 2255 petitioner at plea hearing, combined with other evidence, did not conclusively foreclose relief).

The government's argument that the district court had the opportunity to observe Howard at the suppression hearing held four days before the plea discussion fails for the same reason. That the judge may have thought that Howard acted with intelligence and understanding at that hearing is insufficient to show conclusively that Howard's claim regarding the later plea hearing lacks merit. *Sanders,* 373 U.S. at 20; *Lopez,* 439 F.2d at 1000.

The record reveals that Howard was under the influence of a powerful narcotic drug that could have affected his cognition; the only question is whether it actually did. That he could have been rendered incompetent, and specifically and credibly claims to have been so, is sufficient to tip the scales in favor of an evidentiary hearing on this aspect of his claim.

## B. Counsel's performance

Howard alleged in his petition that his counsel "improperly allowed [Howard] to enter a plea while under the influence of a narcotic drug." In his initial memoran-dum in support of the petition, he further alleged that counsel "waited until the 'eleventh hour' to negotiate a plea agreement and present its terms to" Howard, without informing Howard of the plea agreement "until immediately prior to the hour that the jury trial was scheduled to commence." Howard also testified under oath at the plea hearing that he had only gone through the plea agreement "a little bit" and could not answer the court's question as to "what's in them."

■ The late timing of the proffer of the plea does not, by itself, support an ineffective assistance of counsel claim. When combined with Howard's uncontroverted drug use and allegations of incompetence, however, the claim has sufficient merit to justify an evidentiary hearing. When counsel has reason to question his client's competence to plead guilty, failure to investigate further may constitute ineffective assistance of counsel. *Cf. Rohan v. Woodford,* 334 F.3d 803, 818 (9th Cir.2003) ("Whether trial counsel were constitutionally ineffective [for failing to pursue a competency hearing] may depend on their interactions with [petitioner]. The more obvious his incompetence at the time, the more likely that they were deficient for failing to recognize it."); *Douglas v. Woodford,* 316 F.3d 1079, 1085 (9th Cir. 2003) ("Trial counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired."). Howard's statement that he was under the influence of a strong narcotic was sufficient to trigger an inquiry into his competence to plead guilty unless his counsel possessed some other knowledge suggesting that Howard was competent.

The district court found that the record conclusively established that Howard's counsel "advocated appropriately on his behalf at sentencing." To the extent this

finding means to say that counsel was knowledgeable about Howard's medication and its effect on Howard's competency to understand and approve the plea agreement, we disagree. The record does not indicate whether counsel knew how much Percocet/Percodan his client had taken or whether he believed his client to be competent despite the medication. Nor is there any indication that Howard had reviewed or accepted all the terms of the plea agreement at a time when he was not under the influence of Percocet/Percodan. This latter circumstance was crucial in *Miles v. Stainer*, 108 F.3d 1109 (9th Cir.1997), where we held that counsel was not ineffective in failing to ask the petitioner before a plea hearing whether he was taking the medication required to maintain his competency or to bring the issue of petitioner's competency to the court's attention. 108 F.3d at 1113. There, the record showed that "counsel discussed Miles' options with him *at a time when he was competent*, and that he decided to plead guilty in exchange for dismissal of some of the counts against him." *Id.* (emphasis added). Because counsel had acted according to her client's "reasoned instructions," her failure to question Miles' competency was not unreasonable when to do so "would jeopardize the plea bargain, against her client's wishes." *Id.* In the absence of any such record evidence here, we conclude that the petition, files and record do not conclusively foreclose Howard's claim that his counsel's performance fell below an objective standard of reasonableness.

The dissent asserts that our reliance on *Miles* is misplaced because there is no evidence that Howard had any better al-

ternatives, such as being able to consider the plea agreement when he was not impaired. *See dissent*, at 12144. But we do not know whether there was a better alternative. The plea agreement was presented to Howard on the day his trial was set to start.[8] If Howard's counsel believed his client to be incompetent, he might have asked for a recess until the afternoon, or the next morning, to attempt to ascertain Howard's competency and, if Howard were incompetent, to permit the Percocet/Percodan to run its course. We know that counsel did not seek such a continuance, but there is nothing in the record to suggest that he could not have done so. In short, the dissent's assertion merely underscores the need for the further development of the record in an evidentiary hearing to answer questions such as whether counsel was aware of the effects of the Percocet/Percodan on Howard and, if not, why counsel failed to inquire into whether his client was competent to plead guilty after Howard acknowledged his use of the drug when questioned by the court at the plea hearing.

## II.

To satisfy *Strickland's* prejudice prong, Howard must allege that but for counsel's errors, he would either have gone to trial or received a better plea bargain. *See United States v. Baramdyka*, 95 F.3d 840, 846–47 (9th Cir.1996). Howard alleged in his *pro se* reply brief before the district court:

> The resulting prejudice is obvious; [Howard] waived his right to a trial by jury, to have the evidence presented against him and proven beyond a reasonable doubt, and to have a jury decide

---

8. Although the district court stated that "the jury is right outside the door," the district court docket in that case, *United States v. Howard*, No. 98–Cr–05442, suggests that jury selection had not yet begun and the district court was likely referring to venire members, rather than jurors.

which elements of the charged offense that would expose him to a penalty and, to what degree.

Given Howard's *pro se* status when pursuing his § 2255 petition before the district court, we shall interpret this allegation as a sufficient statement that he would not have entered the plea and would have taken the case to trial if his counsel had not permitted him to plead while incompetent. *See United States v. Seesing*, 234 F.3d 456, 462 (9th Cir.2000) ("Pro se complaints and motions from prisoners are to be liberally construed."). This specific allegation, if true, would establish prejudice. *See Baramdyka*, 95 F.3d at 846–47.[9] *Cf. Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990) (holding that mentally incompetent petitioner had met prejudice prong of the *Strickland* test "because if [he] was incompetent his plea was ineffective and he was prejudiced by its entry").

The government attempts to show conclusively that Howard would not have opted against entering a plea, arguing that the evidence against Howard was "overwhelming," that his only defense was to suppress evidence and that Howard received a "substantial benefit" by pleading because doing so reduced his sentencing range from 360 months to life to 292 to 365 months. As with the government's explanations for Howard's behavior at the plea hearing, these arguments are plausible and may be factually correct, but that is for the district court to determine after an evidentiary hearing. The record does not conclusively establish that there is no "reasonable probability" that Howard would have gone to trial and thus that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

## III.

Howard's allegations are sufficiently specific to meet the low threshold for an evidentiary hearing on his claim of ineffective assistance of counsel. The record before us is insufficient to show conclusively that Howard is not entitled to any relief. Thus the district court erred in denying Howard's § 2255 petition without having held an evidentiary hearing.

**REVERSED and REMANDED for further proceedings consistent with this opinion.**

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent.

Were the question whether an evidentiary hearing should have been held to determine whether Howard was denied due process because of an inadequate inquiry regarding his competence at the time of his plea, I might well concur. I share the majority's concern about the inadequacy of

---

9. As noted above, we do not reach the determination of whether Howard's claim must be supported entirely by sworn allegations because the government did not argue this point. Had the government not waived this argument, however, the question of whether Howard had sufficiently alleged prejudice would present the closest question. Howard provided specific factual allegations under oath regarding his incompetency and his counsel's performance. By contrast, he made no such specific, sworn factual assertions with regard to prejudice. Instead, such asser-

tion is at most implicit in his *pro se* § 2255 petition, because he seeks to vacate his plea, tantamount to stating that he would have been better off going to trial. That Howard might have refused to enter into the plea agreement is not an incredible notion, however. Nor is it refuted by the record. In the absence of any argument by the government that we should disregard his specific, unsworn claims in this regard, his statements in his reply memorandum suffice to justify an evidentiary hearing.

the district court's inquiry. My problem is with blaming the lawyer.

The judge learned that Howard was taking Percocet, and probably should have inquired more thoroughly about whether Howard understood what he was doing. Anyone who has had teeth pulled or broken bones treated has taken narcotic painkillers and knows that they sometimes dull the wits. They can also sharpen them, if the pain is so excruciating that the narcotics enable the mind to focus on something other than the pain. The judge learned that Howard was on narcotic painkiller medication stronger than what one gets for root canals and extractions. Howard had been repeatedly hospitalized for fifteen years for complications resulting from compound fractures to his leg in a motorcycle accident, and the Percocet evidently was for his leg pain.

The majority concedes, though, that "we do not address whether Howard's plea should be vacated because of his alleged incompetency or because the district court may not have sufficiently inquired into his competency."[1] What the judge did or should have done at the change of plea is not before us. The question before us is whether Howard's *lawyer* rendered assistance below the *Strickland* standard by letting Howard take the deal while he was possibly impaired by his painkilling drugs. What the lawyer *did* is an altogether different issue from what the judge did.

To obtain relief for ineffective assistance of counsel, Howard has to establish two things: deficiency in what his lawyer did, and prejudice. This showing is his burden, and he is not entitled to an evidentiary hearing in the absence of any showing, merely because of a speculative possibility. Even construing his papers liberally, he does not allege either deficiency or prejudice. In his petition, he says that he was under the influence of the narcotic drug. He does not claim that there was any time that his lawyer could have presented the plea agreement to him and had him enter a plea when he was *not* under the influence of the narcotic medication for his old motorcycle injury.

Howard's problem with his lawyer was counsel's sentencing prediction, not Howard's supposed incompetence. The only accusation Howard makes against his lawyer in his petition is that "Counsel improperly advised Petitioner of the extent of his exposure under the plea of guilty." That is not before us, nor would such a challenge be successful.[2] He also accuses his lawyer of failing to appeal, and failing to argue unconstitutionality of the drug laws regarding cocaine and methamphetamine, but those claims, too, are not before us.

What we must look for, in an ineffective assistance claim based on petitioner's incompetence at the time of the plea, is an allegation that the petitioner would not have pleaded guilty[3] but for counsel's alleged error in allowing him to do so while mentally incompetent.[4] That is something Howard never claims. He does not say so in his petition, and does not say so in any of his other papers. Without it, he has no allegation of prejudice from the alleged

---

1. Op. at 877 fn. 5.

2. *See United States v. Keller,* 902 F.2d 1391, 1394 (9th Cir.1990) (holding that erroneous predictions regarding a sentence are deficient only if they constitute a "gross mischaracterization of the likely outcome" of a plea bar-

gain combined with "erroneous advice on the probable effects of going to trial").

3. *Hill v. Lockhart,* 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

4. *Miles v. Stainer,* 108 F.3d 1109, 1113 (9th Cir.1997).

ineffective assistance. This is fatal to his petition.

What Howard does say is that "the maximum sentence petitioner should have been exposed to as a result of his guilty plea was 240 months," not the 292 months he got. And he says that "had counsel not misrepresented to petitioner the exposure [to 292 months] Petitioner would not have pleaded guilty." Howard never says he would not have pleaded guilty but for his medication-induced impairment, just that he would not have pleaded guilty had he realized his sentence could be 292 months. Construing his papers as though he had claimed he would not have pleaded guilty but for the narcotics is not a "liberal" reading, it is reading what he said as though he had said something quite different.

The case does not need an evidentiary hearing with no allegation of prejudice, so nothing more needs to be considered. But the majority goes further (as it must to grant a hearing), and makes what I think is a mistake. The majority opinion says that the late timing of the proffer of the plea, combined with Howard's uncontroverted drug use and allegations of incompetence, is sufficient to justify an evidentiary hearing. It rests this conclusion on the proposition that Howard's attorney may have given ineffective assistance by not stopping the proceedings to investigate his client's competency once Howard stated he was under the influence of drugs. That strikes me as an insupportable proposition, inadequately reflecting the practicalities of what defense lawyers must deal with.

Howard complains in his brief to the district court, which the majority treats as though it was part of his sworn petition,

that he had no adequate time to study the plea agreement and relied on counsel's advice, and that his lawyer initially predicted a sentence of 120 to 180 months, probably toward the lower end because of his medical condition.[5] He claims it was ineffective assistance "for counsel to put petitioner in the position of making a rushed judgment," especially when he was under the influence of his medication, and to "mislead" him about his sentencing exposure. But these complaints *cannot* suffice to allege ineffective assistance unless counsel had some more desirable alternative. There is nothing in the record, nothing in the allegations, nothing anywhere, to suggest that he did.

First, there is nothing to suggest that the plea agreement was available at any earlier time. This change of plea was made with the jury waiting in the anteroom, on the scheduled first day of trial. It cut Howard's exposure to a maximum of 365 months, harsher than what Howard says his lawyer predicted, but probably better than what he was facing without the deal, 360 months to life. The judge asked Howard, "Is this what you want to do? If you don't, Mr. Howard, the jury is right outside the door." There is nothing at all to suggest that the deal was available at any earlier time, or that, with the jury waiting to come in, that it could be deliberated upon until any later time. There is nothing in the record to suggest that Howard's lawyer, rather than the prosecutor, was responsible for the last minute pressure to make a deal or go to trial.

Nor is there anything in the record to suggest that there would have been *any* better time for Howard to deliberate about the deal. He was taking strong prescrip-

**5.** Howard alleges that counsel assured him and his parents that he would receive 120 to 180 months. Counsel stated at the plea hearing, however, that "[i]t looks like it comes down to 188 months."

tion medicine that allegedly dulled his wits for pain. Without it, assuming his pain was severe enough to justify a prescription for these powerful painkillers, the pain presumably would have impaired his ability to deliberate. A person in excruciating physical pain may be as unable to make sensible judgments for himself as may one whose pain and wits are both dulled by pain medication. The need to make a grave decision in a hurry while impaired was a bad situation, but there is nothing to suggest that the bad situation was Howard's lawyer's fault.

The majority cites *Miles v. Stainer*, but *Miles* does little to support the majority opinion. *Miles* holds that "assuming arguendo that [counsel] had reason to doubt his competency on the day of the guilty plea, we are not willing to say that he failure to bring the matter to the court's attention—which would jeopardize the plea bargain, against her client's wishes—is a transgression that violates *Strickland's* strong presumption of reasonable conduct." [6] *Miles* is distinguishable, because counsel in that case had discussed the defendant's options with him at a time when he was competent. But in this case, there is nothing in the record to suggest either that the option of the plea bargain existed at an earlier time, or that there was any earlier time when the defendant was not impaired.

Not infrequently, in criminal and civil litigation, one's adversary makes a take-it-or-leave-it offer with ten minutes to decide. The ten minutes may not be enough time for a grave and complex decision. It may be a bad time, for all sorts of reasons including physical or other impairment to decide during the ten minutes. But through no fault of one's own attorney, sometimes it is the only time. Without something in the record to hang the blame

for this on Howard's lawyer, we cannot properly call what he did ineffective assistance.