Jimmie Leon POLLARD, Petitioner–Appellant,

v.

George GALAZA, Respondent–Appellee.

No. 00–16210.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 2002.

Filed May 14, 2002.

Rachelle Barbour, Federal Defender, Sacramento, CA, for the petitioner-appellant.

Leah Ann Alcazar, Deputy Attorney General, Fresno, CA, for the respondent-appellee.

Before: O'SCANNLAIN and TALLMAN, Circuit Judges, and KING, District Judge.*

## OPINION

KING, District Judge.

We must decide whether the state court correctly allowed the government to use a statement, obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at trial for impeachment purposes.

### I

This case arises out of habeas petitioner Jimmie Leon Pollard's conviction in a California state court for second-degree murder and trespassing. After Pollard was arrested and taken into custody, he was held in the police station interview room. About three hours after his arrest, Pollard was sleeping when Detective Bob Stratton of the Bakersfield police awakened him for fingerprinting. After Pollard was fingerprinted at the lab, he was returned to the interview room. About fifteen minutes after that, Detective Stratton started to question him. Detective Stratton read Pollard his *Miranda* rights and Pollard stated that he understood his rights and that he did not want to speak to Detective Stratton. After a brief pause, Pollard initiated further conversation by asking Detective Stratton what happened. Detective Stratton informed Pollard that a man had been killed and that Pollard was seen leaving the apartment. Detective Stratton continued the conversation by asking questions, and Pollard would reply. Pollard proceeded to describe his activities on the night of the murder which were eventually used to impeach him during his trial.

During the interview Detective Stratton was wearing plain clothes with no visible firearm. Pollard was not handcuffed or otherwise physically restrained. Pollard and Detective Stratton were seated opposite each other separated by a small desk in the interview room. Although Detective Stratton initially thought Pollard was under the influence of a drug or alcohol, he concluded that Pollard was coherent and was carrying himself in a normal manner. Detective Stratton continued the conversation after Pollard stated twice that he did not want to speak to him because Pollard continued speaking to him, and because he knew that the statements could possibly be used later for impeachment.

During the trial, Pollard testified inconsistently from his statement to Detective Stratton. Over Pollard's objection, the government introduced portions of the earlier statement for the limited purpose of impeaching him. Pollard was convicted and sentenced to a prison term of nineteen years to life.

### A

We review a district court's decision to deny habeas relief de novo. *See Alvarado v. Hill*, 252 F.3d 1066, 1068 (9th Cir.2001). We also consider the issue of whether a confession is voluntary or coerced de novo. *See Collazo v. Estelle*, 940 F.2d 411, 415 (9th Cir.1991); *see also United States v. Doe*, 170 F.3d 1162, 1168 (9th Cir.1999). To prevail, Pollard must demonstrate that

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

the state court's adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001)(citing 28 U.S.C. § 2254(d)(1)). State court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Zichko v. Idaho,* 247 F.3d 1015, 1019 (9th Cir.2001).

### B

▄▄▄ It is undisputed that Pollard's statement to Detective Stratton was taken in violation of *Miranda.* The issue before us is whether the statement was voluntary and therefore admissible for impeachment at trial. Although a statement, taken in violation of *Miranda,* may not be used substantively in the prosecution's case-in-chief, such a statement, if voluntary, may be used for impeachment should the Defendant testify inconsistently. *See Harris v. New York,* 401 U.S. 222, 224–26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). "If a defendant exercises his right to testify on his own behalf, he assumes a reciprocal 'obligation to speak truthfully and accurately.'" *Michigan v. Harvey,* 494 U.S. 344, 351, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) (quoting *Harris,* 401 U.S. at 225, 91 S.Ct. 643). The Supreme Court has consistently rejected arguments that would allow a defendant to "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." *Id.* (quoting *Harris,* 401 U.S. at 224, 91 S.Ct. 643). However, if the statement was procured such that it was involuntary, then the statement is excluded for all purposes. *Michigan v. Harvey,* 494 U.S. 344, 351, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990); *Henry*

*v. Kernan,* 197 F.3d 1021, 1029 (9th Cir. 1999).

### II

Pollard argues that he was groggy when he informed Detective Stratton that he did not want to speak, and that Detective Stratton "enticed" Pollard to make incriminating statements by asking about his drug and alcohol use before moving on to the facts surrounding the crime. Pollard also argues that the statement was per se involuntary because it was taken in the course of an intentional and deliberate violation of *Miranda.* The government maintains that the statement was voluntary since Detective Stratton did not make misrepresentations or use coercion sufficient to make the statement involuntary. We agree.

▄▄▄ Under the Fourteenth Amendment, a confession is involuntary only if the police use coercive means to undermine the suspect's ability to exercise his free will. *See Henry,* 197 F.3d at 1026. In determining whether a statement is voluntary, the court looks at the surrounding circumstances and the combined effect of the entire course of the officer's conduct upon the defendant. *See United States v. Polanco,* 93 F.3d 555, 560 (9th Cir.1996). The test of voluntariness is well-established: "Is the confession the product of an essentially free and unconstrained choice by its maker? ... The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession." *Collazo,* 940 F.2d at 416.

▄▄▄ Courts that address this issue look at factors such as the declarant's state of mind, the physical environment in which the statement was given, and the manner in which the declarant was questioned.

*See Mincey v. Arizona,* 437 U.S. 385, 398–99, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)(finding statement obtained from a defendant who was in the hospital, in near coma condition and in great pain, while encumbered with tubes, needles, and breathing apparatus, could not have been voluntary). The tone of voice used and the promises or representations made by the questioner have also been factors used to decide whether a statement was voluntary. *See Henry,* 197 F.3d at 1027 n. 3.

At one extreme, this Court has held that questioning which becomes psychologically coercive may result in an involuntary statement. *See id.* at 1027. In *Henry,* the detective coerced the declarant to give a statement by representing that the declarant's statement could not be used against him. *See id.* We also found it significant that the declarant's statement was incoherent, confused, disjointed, and throughout the interview the declarant was shaken, frightened, and crying. The Court described the detective's comments as misleading in that they were "intended to convey the impression that anything said by the defendant would not be used against him for any purposes." *Id.* at 1027–28. *Henry* concluded that "the slippery and illegal tactics of the detectives overcame Henry's will and that he continued his confession only as a result of their deception." *Id.* at 1027.

Similarly, in *Cooper v. Dupnik,* we found in a § 1983 action that a suspect's Fifth Amendment rights were violated when police detectives engaged in a "plan" to compel the suspect to confess even after exercising his right to remain silent and requesting the assistance of an attorney. 963 F.2d 1220 (9th Cir.1992)(en banc). We noted that the interrogators intentionally ignored the suspect's repeated requests for counsel as a "tactic[ ] designed to generate a feeling of helplessness[.]" *Id.* at 1243. We considered this type of questioning where interrogators "continuously badgered [the suspect] for four hours in an attempt to avulse a confession," to be of the exact nature that *Miranda* sought to prohibit. *Id.*

■ However, we have explained that misrepresentations made by law enforcement in obtaining a statement, while reprehensible, does not necessarily constitute coercive conduct. *See United States v. Orso,* 266 F.3d 1030, 1039 (9th Cir.2001) (en banc). "When neither the initial nor the subsequent admission is coerced, little justification exists for permitting the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder." *Id.* at 1036 (citing *Oregon v. Elstad,* 470 U.S. 298, 312, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)). Further, we noted that a "defendant's mental state alone does not make a statement involuntary." *Id.* at 1039 (citing *United States v. Turner,* 926 F.2d 883, 888 (9th Cir.1991)). Rather, "[c]oercive conduct by police must have caused [him] to make the statements." *Id.*

### III

Because we are reviewing a petition for habeas corpus, the focus is on the reasonableness of the state court's consideration of Pollard's claim. Under 28 U.S.C. § 2254(d), a federal court may not grant an application for a writ of habeas corpus by a state prisoner if the claim was adjudicated on the merits in state court proceedings, unless the adjudication of the claim either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1).

■ ■ State court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Zichko,* 247 F.3d at 1019 (9th Cir.2001); *Bragg v. Galaza,* 242 F.3d 1082, 1087 (9th Cir.), *amended,* 253 F.3d 1150 (9th Cir.2001). This presumption applies even if the finding was made by a state court of appeals rather than by the state trial court. *See Bragg,* 242 F.3d at 1087.

In this case, the California Court of Appeals issued an opinion that stated the facts adduced at trial and the legal support for allowing the statement to be used to impeach Pollard. We see no reason to depart from those findings.

■ In this case, the state court correctly found that Detective Stratton's actions did not amount to coercion or compulsion. Detective Stratton advised Pollard of his *Miranda* rights and Pollard stated that he did not want to make a statement. After a short pause, Pollard initiated further conversation by asking, "What happened?" This prompted Detective Stratton to engage in a discourse about the events that took place that night. Detective Stratton testified that it was his normal practice to continue asking questions although a suspect expressed his right to remain silent. However, while Detective Stratton continued talking to Pollard, it became less of an interrogation and more of a conversation. Detective Stratton did not misrepresent the nature or purpose of the interview, nor did he make promises to or threaten Pollard. He did not confront Pollard with any evidence that police may have had linking him to the crime.

Pollard makes much of the fact that Detective Stratton was aware that his continued questioning violated *Miranda* and knew that the statements might nonetheless be used for impeachment at trial. Pollard contends that Detective Stratton "enticed" him into making incriminating statements by asking him about drug and alcohol use. Detective Stratton testified that he was trying to discern whether Pollard was coherent. Pollard contended that Detective Stratton would not relent, but it was Pollard who initiated the conversation after initially saying he did not want to talk. Even if this Court accepted Pollard's enticement argument, that alone would not constitute coercive conduct per se. *See Orso,* 266 F.3d at 1039 (finding an inspector's misrepresentation that a piece of evidence existed, while reprehensible, did not constitute coercive conduct).

During the interview, Pollard did not appear to be sweating, nervous, or showing signs of discomfort. The physical environment of the interrogation area did not appear to be excessively uncomfortable.

■ *Miranda* and its progeny do not allow the use of statements which were obtained without *Miranda* warnings. *See New Jersey v. Portash,* 440 U.S. 450, 459, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). The sanction for failing to advise a suspect of his *Miranda* rights is to deny the government the opportunity to introduce that statement as part of its case-in-chief. *See Oregon v. Hass,* 420 U.S. at 723–24, 95 S.Ct. 1215. However, there is no such prohibition on the use of a voluntary statement for impeachment purposes. *See Mincey,* 437 U.S. at 397–98, 98 S.Ct. 2408 (holding that while statements obtained in violation of *Miranda* may be used for impeachment if otherwise trustworthy, the Constitution prohibits "*any* criminal trial use against a defendant of his *involuntary* statement").

In this case, although Pollard's statement was obtained in violation of *Mi-*

*randa*, the state court found that the statement was provided voluntarily. Although Detective Stratton engaged Pollard in a conversation to glean information which could possibly be used for impeachment, it is significant that Pollard initiated the further discussion. The state court's finding of voluntariness was not contrary to, nor an unreasonable application of established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Given the finding of voluntariness, we need not address the propriety of purposeful violations of *Miranda* in other contexts.

**AFFIRMED.**