BERZON, Circuit Judge,
dissenting:
I dissent.
I would hold that the California appellate court’s conclusion that Pablo Cobb did not unambiguously invoke his Fifth Amendment right to counsel “involved an unreasonable application of ... clearly established Federal law.” 28 U.S.C. § 2254(d). Accordingly, I would reverse the district court’s denial of Cobb’s petition for writ of habeas corpus and grant the writ.
“[A] suspect [in custody] who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present.” Davis v. United States, 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The suspect’s request for counsel must be unambiguous. Id. at 459, 114 S.Ct. 2350. In other words, it must be “sufficiently clear[ ] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Id. Perhaps obviously, the request must also be heard by an officer: “[t]o invoke a right to counsel, the suspect himself must request an attorney and a representative of the state must hear that request.” Hyatt v. Branker, 569 F.3d 162, 169 (4th Cir.2009) (citing Davis, 512 U.S. at 458-59, *209 114 S.Ct. 2350) (holding that the state court did not err in concluding that the defendant had not invoked his right to counsel by asking his father, in the presence of a law enforcement officer, “to get him a lawyer” because the trial court’s findings were “ambiguous as to whether [the officer] actually heard [the defendant] request an attorney”).
I can scarcely conceive of a more unambiguous request for counsel than the ones Cobb made in this case. While talking to his girlfriend in the interrogation room right after his interview was suspended, Cobb asked for an attorney at least six times. Cobb asserts, and the state concedes, that the police were monitoring the conversations between Cobb and his girlfriend. According to the transcript of the videotaped interrogation, Cobb made the following statements to his girlfriend or her grandmother as they were urging him to talk to the police:
“I want to talk to a lawyer.”
“I want an attorney.”
“I just want to talk ... to my lawyer first and talk to you.”
“I need a lawyer, ‘cause, uh — I need a lawyer for (Unintelligible).”
“I’m not until I talk to a lawyer.”
“I’ve got to see paperwork. I need a lawyer. I want a lawyer.”
Thus, while the police listened in, Cobb clearly and repeatedly articulated his desire to speak with an attorney. Under these circumstances, it was unreasonable for the state court to conclude that Cobb had not invoked his right to counsel. Whether Cobb’s girlfriend was acting at the police’s behest in talking to Cobb does not matter. The critical point is that Cobb said, six times, unambiguously, that he did not want to talk further to the police without a lawyer. The police definitely — because they were purposely eavesdropping, presumably to hear any incriminating statements — heard him say that.
Cobb did not retract his request when he first met with the police; if anything, he reiterated it, albeit not sufficiently distinctly to constitute a request for counsel had it stood alone. But to me, the question is not whether he requested an attorney again when he met anew with the police; it is whether the police had reason to think he had changed his mind since they heard him say — six times — that he wanted to speak to a lawyer before talking to the police.
The only possible basis for thinking the request retracted was that Cobb, after first asking Detective Winton, “[C]an I talk to you with a lawyer or I have to talk to you?,” said, “Well, I want to talk to you.” But that occurred only after Detective Winton responded to his initial question with: “If you want to talk to a lawyer it ends right now, right now, and I take you across the street [to jail].” In other words, Cobb had no opportunity to decide with a lawyer’s help whether to speak to the police before being booked, and agreed to talk without a lawyer only after being told, essentially, that he would be booked for the crime if he invoked his right to counsel but might not be if he did not. By telling Cobb that he would be booked right away — and lose his chance to speak to the police — if he asserted his right to counsel, Detective Winton was “attempting] to impose a penalty on [Cobb’s] invocation” of his constitutional rights. Collazo v. Estelle, 940 F.2d 411, 417 (9th Cir.1991) (en banc). The state appellate court dismissed this concern, reasoning that “as a practical matter, Winton was right that Cobb’s retention of counsel would end the interview.”[1] People v. Cruz Armando Avila, No. C029883, at 29, 2002 WL 853554 (Cal.Ct.App. May 2, 2002). Indeed, it is likely that a defense attorney would have *210 counseled Cobb against speaking to the police, but that is certainly not a foregone conclusion; the attorney could have tried to negotiate for a cooperation deal in advance of booking, for example. More to the point, it was up to Cobb and his attorney to decide whether it was in Cobb’s best interests to speak to the police.
In sum, the police should not have questioned Cobb after they overheard him say, over and over again, that he wanted to talk to a lawyer. By instead ignoring those requests and attempting to impose a penalty on any request for counsel when he raised the issue anew, the police violated Cobb’s Fifth Amendment right to counsel. It was unreasonable of the state court to find otherwise. I would reverse the district court and grant the writ of habeas corpus. I respectfully dissent.

. In Collazo, the state advanced a similar argument without success. There, a police *210 officer told the defendant, "Once you get a lawyer, he’s gonna say forget it. You know, don't talk to the police. Then it might be worse for you.” 940 F.2d at 414. The state argued that the officer’s statement was "harmless” because it was "true”: ”[A]ny defense lawyer is going to tell his client not to talk to tile police.” Id. at 418 n. 8. We rejected this argument as "borderLing] on the absurd.” Id.