**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DAVID PATRICK ALFORD,

  Petitioner-Appellee,

v.

JOE A. LIZARRAGA, Warden,

  Respondent-Appellant.

No.  16-16247

D.C. No. 3:14-cv-02904-JST

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted October 11, 2017
San Francisco, California

Before:  THOMAS, Chief Judge, REINHARDT and O'MALLEY,[**] Circuit
Judges.

  1.  Alford argues that his trial testimony, and his statements made during his
interrogation, should not be part of the harmless-error analysis because he might
not have testified had he not been obligated to explain his erroneously-admitted

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Kathleen M. O'Malley, United States Circuit Judge for
the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

statements. Alford, however, never suggested to the state courts that the introduction of the statements induced his trial testimony. Accordingly, this issue was not presented to the state courts and the California Court of Appeal's harmless-error analysis was not contrary to *Harrison v. United States*, 392 U.S. 219 (1968).

2. The statements made during Alford's interrogation were inculpatory to the extent that he placed himself with the victim and acknowledged doing "something" that could expose him to penological consequences. However, as the state court determined, his trial testimony provided the most compelling evidence of second degree murder. He testified in great detail to the events in the car, including striking the victim in the back of the head with a loaded gun. Our harmless-error analysis is guided by, among other factors, "the overall strength of the prosecution's case." *Ocampo v. Vail*, 649 F.3d 1098, 1114 (9th Cir. 2011) (citation omitted); *see also Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (finding harmlessness in part because "the State's evidence of guilt was, if not overwhelming, certainly weighty"). In light of Alford's trial testimony, we are compelled to conclude that the erroneous introduction of his statements made during his interrogation did not have a "substantial and injurious effect or influence

in determining the jury's verdict."[1]  *Brecht*, 507 U.S. at 637; *see also Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015).

**REVERSED.**

---

[1] In any event, the prosecutor's primary use of the statements Alford made during interrogation was during the State's closing argument and for the purpose of impeaching Alford's credibility.  *See Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002) (voluntary statements taken in violation of *Miranda* "may be used for impeachment should the Defendant testify inconsistently").

*Alford v. Lizarraga*, No. 16-16247

O'MALLEY, Circuit Judge, dissenting:

I respectfully dissent from the panel's disposition of this case. The district court carefully considered the impact of the state's use of statements elicited from Alford in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). After a full review of the record, the district court concluded that the introduction of Alford's interrogation statements had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).[1] I agree. The fact that statements taken in violation of *Miranda* generally may be introduced for impeachment purposes does not alter my conclusion that the unconstitutional use of Alford's statements at his trial was not harmless.

First, it is not clear that the interrogation statements at issue actually would have been admissible as impeachment evidence. The interrogation statements appear to have been consistent with Alford's statements at trial. The prosecutor's criticism of Alford's interrogation statements was that they were less detailed than

---

[1] "Because it is more stringent, the *Brecht* test 'subsumes' the AEDPA/*Chapman* standard for review of a state court determination of a constitutional violation." *Deck v. Jenkins*, 814 F.3d 954, 985 (9th Cir. 2014) (quoting *Fry v. Pliler*, 551 U.S. 112, 120 (2007)). As this court has explained, "[a] determination that the [trial court's] error resulted in 'actual prejudice' necessarily means that the state court's harmlessness determination was not merely incorrect, but objectively unreasonable." *Id.* (quoting *Brecht*, 507 U.S. at 637) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198–99 (2015)). "A federal habeas court therefore need not formally apply both the *Brecht* test and the AEDPA standard; it is sufficient to apply *Brecht* alone." *Id.* (citing *Fry*, 551 U.S. at 120).

1

the account Alford offered at trial, not that he had changed his story. The prosecutor focused not on what Alford said during his interrogation, but what he did *not* say once he had invoked his right to counsel. Interrogation statements violating Miranda only are admissible "should the Defendant testify inconsistently." *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002). I do not think Alford did so here.

Second, the majority does not dispute that the jury was never instructed that the interrogation statements could not be used as substantive evidence of guilt, which is required whenever such statements are proffered for impeachment purposes. As the district court found, there is a very real possibility that the jury did consider his statements as substantive evidence of guilt. Indeed, they were repeatedly implored to do just that by the prosecutor. During her closing argument, the prosecutor argued at length that Alford's demeanor and statements were incongruous with how one "would expect somebody to behave if they had just killed somebody by accident." As set forth in the district court's description of the record, page after page of the prosecutor's closing repeated this theme. Although the prosecution introduced other substantive evidence of guilt, the interrogation apparently loomed large in the jury's decisionmaking because it asked to watch the recorded interrogation on the third day of deliberation. I would find that the introduction of the interrogation statements, in combination with the prosecutor's extensive use of those statements as substantive evidence of guilt, had a sufficiently

2

large effect on the jury's verdict—beyond the possible use of the interrogation as impeachment evidence—to warrant habeas relief.

Third, even if Alford did not exhaust an argument under *Harrison v. United States*, 392 U.S. 219 (1968), that the erroneous introduction of his interrogation statements induced his trial testimony, I believe the district court was correct to consider the fact that Alford's testimony might have differed if not for the introduction of the interrogation. Alford argued that reliance on his testimony as actually proffered was inappropriate. He made this argument in response to the state's contention that the introduction of his interrogation statements was harmless because Alford's trial testimony constituted sufficient evidence of guilt. Alford was not raising a freestanding claim for habeas relief under *Harrison*; he was responding to the state's argument that its admitted *substantive* use of tainted testimony was harmless. His point was that, even if he might have still testified at trial, the court should not assume his testimony would have been elicited in the same way. Exhaustion is simply not an issue for that argument. Thus, even if, as the district court concluded, it is not clear whether Alford's testimony was induced in its entirety by the introduction of the interrogation statements, we must assume that the introduction of those statements at the very least "affected [Alford's] strategy" at trial. *Garcia v. Long*, 808 F.3d 771, 784 (9th Cir. 2015). The district court properly considered this effect in considering whether the admission was harmless.

3

The fact that the interrogation statements do not likely even qualify as impeachment evidence, combined with the prosecutor's undue emphasis on those statements, the trial court's failure to properly instruct the jury regarding the proper purpose for which such statements may be considered, and the district court's factual finding that Alford's testimony might well have differed in the absence of the state's constitutional violation, convince me that the district court reached the right conclusion here. We should affirm.