**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERENCE B. TEKOH, *Plaintiff-Appellant*, | No. 18-56414 |
| v. | D.C. No. 2:16-cv-07297-GW-SK |
| COUNTY OF LOS ANGELES; DENNIS STANGELAND, Sergeant; CARLOS VEGA, Deputy, *Defendants-Appellees*, | |
| and | OPINION |
| LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; DOES, 1 TO 10, *Defendants.* | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted April 27, 2020
Pasadena, California

Filed January 15, 2021

Before: Kim McLane Wardlaw, Mary H. Murguia, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Wardlaw

## SUMMARY[*]

### Civil Rights

The panel vacated the district court's judgment on a jury's verdict, reversed the district court's judgment as to plaintiff's requested jury instruction, and remanded for a new trial in an action alleging, in part, that plaintiff's Fifth Amendment right against self-incrimination was violated when his un-*Mirandized* statement was used against him at his criminal trial.

The district court concluded that the use of the statement alone was insufficient to demonstrate a violation of the right against self-incrimination and, instead, instructed the jury that the plaintiff had to show that the interrogation that procured the statement was unconstitutionally coercive under the totality of the circumstances, with the *Miranda* violation only one factor to be considered.

The panel held that in light of the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428 (2000), which held that *Miranda* is a rule of constitutional law that could not be overruled by congressional action, where the un-*Mirandized* statement has been used against the defendant in the prosecution's case in chief in a prior criminal proceeding, the defendant has been deprived of his Fifth Amendment right against self-incrimination, and he may assert a claim against the state official who deprived him of that right under § 1983.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court erred interpreting *Chavez v. Martinez*, 538 U.S. 760 (2003), to stand for the proposition that a § 1983 claim can never be grounded on a *Miranda* violation. The panel stated Justice Thomas's plurality opinion, which reasoned in dicta that damages were unavailable for *Miranda* violations, did not command support from five Justices and was based on a rationale significantly broader than those of the concurring Justices. Thus, contrary to the district court's conclusion, the broad principles in Justice Thomas's opinion in *Chavez* were not binding in this case.

The panel held that while the question of liability was ultimately for the jury to decide, plaintiff sufficiently demonstrated a Fifth Amendment violation caused by Los Angeles Sheriff's Deputy Carlos Vega under § 1983, such that the district court erred by failing to instruct the jury on this claim. Moreover, there was also no question that Deputy Vega caused the introduction of the statements at plaintiff's criminal trial even though Vega himself was not the prosecutor.

The panel stated that it was not holding that taking an *un-Mirandized* statement always gives rise to a § 1983 action. The panel held only that where government officials introduce an un-*Mirandized* statement to prove a criminal charge at a criminal trial against a defendant, a § 1983 claim may lie against the officer who took the statement. By contrast, in cases like *Chavez*, where the suspect was never charged, or where police coerce a statement but do not rely on that statement to file formal charges, the Fifth Amendment is not implicated.

Finally, the panel could not conclude that it was more probable than not that the jury would have reached the same

verdict had it been properly instructed. Accordingly, the error was not harmless. The panel thus vacated the judgment on the jury's verdict and remanded the case for a new trial in which the jury must be properly instructed that the introduction of a defendant's un-*Mirandized* statement at his criminal trial during the prosecution's case in chief alone is sufficient to establish a Fifth Amendment violation.

## COUNSEL

Paul Hoffman (argued) and John Washington, Schonbrun Seplow Harris & Hoffman LLP, Hermosa Beach, California; John Burton and Matt Sahak, Law Offices of John Burton, Pasadena, California;  for Plaintiff-Appellant.

Antonio K. Kizzie (argued) and Rickey Ivie, Ivie McNeill & Wyatt, Los Angeles, California, for Defendants-Appellees.

## OPINION

WARDLAW, Circuit Judge:

We must decide whether the use of an un-*Mirandized* statement against a defendant in a criminal case is alone sufficient to support a 42 U.S.C. § 1983 action based on the Fifth Amendment violation. The district court concluded that the use of the statement alone was insufficient to demonstrate a violation of the right against self-incrimination and, instead, instructed the jury that the plaintiff had to show that the interrogation that procured the statement was unconstitutionally coercive under the totality of the circumstances, with the *Miranda* violation only one factor to be considered. Neither the Supreme Court nor our

court has directly addressed this precise question.  However, in light of the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428 (2000), which held that *Miranda* is a rule of constitutional law that could not be overruled by congressional action, we conclude that where the un-*Mirandized* statement has been used against the defendant in the prosecution's case in chief in a prior criminal proceeding, the defendant has been deprived of his Fifth Amendment right against self-incrimination, and he may assert a claim against the state official who deprived him of that right under § 1983.

## I.

### A.

Terence Tekoh was working at a Los Angeles medical center when a patient accused him of sexual assault. According to the patient, Tekoh lifted her coversheets and made sexual contact while transporting her within the hospital. Hospital staff reported the allegation to the Los Angeles Sheriff's Department.  Deputy Carlos Vega responded to investigate.

Deputy Vega found Tekoh in the MRI section, where he worked transporting patients to and from their MRIs and their rooms, and the two went into a nearby, private room to talk.  Though Deputy Vega questioned Tekoh, he did not advise him of his *Miranda* rights.  By the end of the questioning, Tekoh had written the following statement:

> To who [sic] it may concern,
>
> This is an honest and regrettable apology from me about what happened a few hours ago.  It was  I don't know what suddenly

came over me, but it was certainly the most weakest moment I've ever been caught up with in my life. I've never ever found myself doing such a despicable act. and I am I don't think this is an excuse but I'm single and currently don't have a girlfriend and became very excited after I first saw her vagina accidently. So after dropping her off, I decided to go further by woking [sic] and spreading her vagina lip for a quick view and then went back to my duty post with the intention of masturbating, which I never did.

How Tekoh came to write this statement is hotly disputed and was the focus of the 42 U.S.C. § 1983 claim against Deputy Vega that gave rise to this appeal.

1. *Tekoh's Account of the Questioning*

In Tekoh's telling, when Deputy Vega first approached him, Vega asked if there was somewhere they could speak in private. Tekoh's co-workers suggested the MRI "reading room,"—a small, windowless, and soundproof room used by doctors to read MRIs. When one of Tekoh's co-workers tried to accompany Tekoh into the reading room, Deputy Vega stopped her and told her the interview was private.

Deputy Vega shut the door and stood in front of it, blocking Tekoh's path to the exit. He then accused Tekoh of touching the patient's vagina. Tekoh adamantly denied the allegation. After about 35 to 40 minutes of questioning during which Tekoh refused to confess, Deputy Vega told him (falsely) that the assault had been captured on video so he might as well admit to it. Still, Tekoh did not confess.

Tekoh then asked to speak to a lawyer, but Deputy Vega ignored the request.  At that point, Tekoh grew frustrated and tried to get up and leave the room.  Tekoh testified:

> I made one or two steps, and [Deputy Vega] rushed at me and stepped on my toes, put his hand on his gun and said, "Mr. Jungle Nigger trying to be smart with me.  You make any funny move, you're going to regret it.  I'm about to put your black ass where it belongs, about to hand you over to deportation services, and you and your entire family will be rounded up and sent back to the jungle . . . . Trust me, I have the power to do it."

According to Tekoh, this outburst left him "shaking" and triggered flashbacks to his experiences with police brutality in Cameroon, where he was from.

Deputy Vega then grabbed a pen and paper, put them in front of Tekoh, and told him to "write what the patient said [he] did."  When Tekoh hesitated, Vega put his hand on his gun and said he was not joking.  According to Tekoh, Vega then dictated the content of the written confession and Tekoh, who was scared and "ready to write whatever [Vega] wanted," acquiesced and wrote the statement down.

2.  *Deputy Vega's Account of the Questioning*

Deputy Vega testified to a much different version of events.  According to Vega, when he first arrived at the MRI section, he asked Tekoh what had happened with the patient, and Tekoh said, "I made a mistake."  Tekoh asked if he could "talk to [Vega] away from [his] co-workers and get a little privacy."

After the two went into the MRI reading room, Vega handed Tekoh a sheet of paper and said, "Can you write what happened while I get my sergeant and we can ask you a couple of questions[?]" According to Vega, Tekoh then wrote out the confession himself without further prompting.

Another officer, Sergeant Stangeland, arrived soon after, joining Deputy Vega in the room with Tekoh. According to Stangeland, Tekoh indicated that he was willing to talk to the officers. Deputy Vega then questioned Tekoh in "a very conversational tone," and Tekoh verbally admitted to touching the patient's vagina. Sergeant Stangeland testified that Tekoh's demeanor was "that of a man who was contrite, who truly, you know, regretted what he had done."

## B.

Tekoh was arrested and charged in California state court with unlawful sexual penetration in violation of California Penal Code § 289(d). Early on in Tekoh's first criminal trial (before his confession was introduced), a witness for the prosecution revealed evidence that had not been disclosed to the defense, and, with Tekoh's assent, a mistrial was declared. During Tekoh's retrial, the prosecution introduced Tekoh's confession as evidence of his guilt. Also during the retrial, Dr. Iris Blandon-Gitlin, an expert on coerced confessions, testified on Tekoh's behalf. The jury returned a verdict of not guilty.

## C.

After his acquittal on the criminal charge, Tekoh filed this action under 42 U.S.C. § 1983 seeking damages for alleged violations of his constitutional rights. The case began with several claims against multiple defendants, but only one is at issue in this appeal: the claim that Deputy Vega

violated Tekoh's Fifth Amendment right against self-incrimination.

Before the first trial in this case, Tekoh asked the district court to instruct the jury that it should find in his favor on the Fifth Amendment claim if it determined that Deputy Vega obtained statements from him in violation of *Miranda* that were used in the criminal case against him. And because the only issue in dispute on this theory was whether Tekoh was "in custody" during the questioning in the MRI reading room such that *Miranda* warnings were required, Tekoh submitted a proposed jury instruction that would have informed jurors of factors to consider on that point. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) ("*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'").

The district court refused to instruct the jury on Tekoh's theory, reasoning that the Supreme Court's plurality decision in *Chavez v. Martinez*, 538 U.S. 760 (2003), held that *Miranda* was a mere "prophylactic rule," rather than a "constitutional requirement," and that a § 1983 plaintiff like Tekoh "[could not] use a prophylactic rule to create a constitutional right." Instead, the district court instructed the jury to evaluate Tekoh's claim that Deputy Vega had coerced a confession as if it were a Fourteenth Amendment claim based on fabrication of evidence.[1] So instructed, the jury returned a verdict in favor of Deputy Vega.

---

[1] This instruction required Tekoh to prove that, at a minimum, "[Deputy] Vega used techniques that were so coercive and abusive that he knew, or was deliberately indifferent, that those techniques would yield false information that was used to criminally charge and prosecute Plaintiff."

After the trial, however, the district court concluded that it had erred by instructing the jury to evaluate Tekoh's claim as if it were brought under the Fourteenth Amendment instead of as a violation of the Fifth Amendment. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1068–69 (9th Cir. 2012) (holding that a coerced confession claim must be brought under the Fifth Amendment, not as a Fourteenth Amendment fabrication-of-evidence claim). It therefore ordered a new trial on the coerced confession claim.

The jury instructions were again contested. Ultimately, the district court gave the jury the following instruction on coerced confessions:

> You must consider the objective totality of all the surrounding circumstances. Whether a confession is improperly coerced or compelled depends on the details of the interrogation.
>
> Factors to consider include, but are not limited to:
>
> > (1) The location where the questioning took place (for example at a police station or on a public street), and whether the location was chosen by the person or the officer;
> >
> > (2) Was the person free to go or was the person under arrest or physically restrained;
> >
> > (3) Was the length of the questioning oppressive;

(4) What Plaintiff was told at the beginning of the encounter and throughout its duration;

(5) The manner in which the person was questioned—for example: was any actual force or infliction of pain used on the person; was the person (or anyone near or dear to him or her) threatened either physically or psychologically; was the officer's gun drawn; did the officer continually shout at the suspect for an extended period; etc.

(6) If the warnings under the *Miranda* decision (as described below) were required at the time, whether the police advised the person being questioned of his or her right to remain silent and to have a counsel present during the custodial interrogation; and

(7) Any other factors that a reasonable person would find coercive under the circumstances.

Again, the jury returned a verdict in favor of Deputy Vega.[2] Tekoh timely appeals.

---

[2] In both civil trials, the district court also excluded testimony from Tekoh's coerced confessions expert, Dr. Blandon-Gitlin, who had testified on Tekoh's behalf at his second criminal trial, which resulted in an acquittal.

## II.

We have jurisdiction under 28 U.S.C. § 1291.[3]    We review de novo the district court's rejection of Tekoh's proposed jury instruction on his *Miranda* theory on the ground that it was not a correct statement of the law.[4]  *Smith v. City & Cnty. of Honolulu*, 887 F.3d 944, 951 (9th Cir. 2018) ("We review a district court's formulation of civil jury instructions for an abuse of discretion, but we consider de novo whether the challenged instruction correctly states the law." (citation omitted)).

---

[3] Deputy Vega briefly argues that we lack jurisdiction to review the district court's refusal to instruct the jury on the *Miranda* theory because Tekoh did not list the orders rejecting his proposed *Miranda* instruction in his notice of appeal.  But the district court's pretrial orders regarding the jury instructions merged into the final judgment, so by appealing the judgment, Tekoh "implicitly brought all of the district court's subordinate orders within the jurisdiction of our court."  *Hall*, 697 F.3d at 1070.

[4] Deputy Vega's argument that Tekoh failed to preserve his challenge to the jury instruction lacks merit.  The propriety of Tekoh's requested jury instruction was extensively litigated in both trials.  The district court made clear on several occasions that it understood Tekoh's argument but was not going to change its mind on giving the instruction.  In fact, the court specifically told Tekoh that he had preserved his objection to the refusal to give the instruction.  This was more than enough to preserve the issue for appeal.  *United States ex rel. Reed v. Callahan*, 884 F.2d 1180, 1184 (9th Cir. 1989) (holding that additional objections to the jury instructions are not required "when it is obvious that in the process of settling the jury instructions the court was made fully aware of the objections of the party and the reasons therefor and further objection would be unavailing").

**III.**

Under 42 U.S.C. § 1983, a plaintiff may bring suit for damages against a state official who deprives him of "any rights, privileges, or immunities secured by the Constitution." Whether the district court should have given Tekoh's proposed *Miranda* instruction turns on whether the introduction of Tekoh's un-*Mirandized* statement at his criminal trial constituted a violation of Tekoh's Fifth Amendment rights.

**A.**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court implemented this guarantee by setting forth "concrete constitutional guidelines" for officers to follow when conducting custodial interrogations. 384 U.S. 436, 441–42 (1966); *see Chavez*, 538 U.S. at 790 (Kennedy, J., concurring) (explaining that *Miranda* warnings were "adopted to reduce the risk of a coerced confession and to implement the Self-Incrimination Clause"). Under *Miranda*, before an individual in custody is interrogated, he must be advised "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444. Thereafter, the officer may proceed with questioning only if the subject of the interrogation agrees to waive these rights. *Id.* at 444–45; *see Berghuis v. Thompkins*, 560 U.S. 370, 382–85 (2010).

*Miranda* marked a significant shift in how courts evaluate the admissibility of confessions. Before *Miranda*, "voluntariness *vel non* was the touchstone of admissibility."

*Davis v. United States*, 512 U.S. 452, 464 (1994) (Scalia, J., concurring).  In determining whether a confession could be admitted in criminal proceedings, courts looked to "the totality of all the surrounding circumstances" to determine "whether [the] defendant's will was overborne." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).  After *Miranda*, however, an officer's failure to provide the requisite *Miranda* warnings or to obtain a valid waiver of the suspect's *Miranda* rights is generally enough, on its own, to "require[] exclusion of any statements obtained."[5]  *Missouri v. Seibert*, 542 U.S. 600, 608 (2004).

In the decades following *Miranda*, there was significant debate about the extent to which *Miranda* warnings were constitutionally required.  On the one hand, the *Miranda* opinion itself appeared to contemplate that statements taken from a defendant who was in custody but had not been given *Miranda* warnings were inherently compelled, and thus obtained in violation of the Fifth Amendment.  *See Miranda*, 384 U.S. at 458 ("Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice."); *see also Dickerson*, 530 U.S. at 447 (Scalia, J., dissenting) (acknowledging that the "fairest reading" of *Miranda* is that the use of un-*Mirandized* statements at trial "violates the Constitution").  And *Miranda* involved proceedings in state courts, over

---

[5] *Miranda* supplemented, rather than replaced, the traditional voluntariness test.  *Dickerson*, 530 U.S. at 444.  Accordingly, a suspect seeking to suppress a confession may show either that it was obtained in violation of *Miranda* or that it was involuntarily given.  *Id.  But see Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare.").

which the Supreme Court lacks plenary supervisory control. *See Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

On the other hand, the *Miranda* decision left open the possibility that the specific warnings set out in the opinion might not be necessary if the states or Congress devised other adequate means of protecting against "the inherent compulsions of the interrogation process." 384 U.S. at 467. And more significantly, in several decisions, the Court described *Miranda* warnings as mere "prophylactic rules" or "procedural safeguards" that were "not themselves rights protected by the Constitution." *New York v. Quarles*, 467 U.S. 649, 653–55 (1984); *Michigan v. Tucker*, 417 U.S. 433, 444 (1974); *see also Oregon v. Elstad*, 470 U.S. 298, 306 (1985) ("The *Miranda* exclusionary rule . . . sweeps more broadly than the Fifth Amendment itself.").

The issue came to a head in *Dickerson v. United States*. *Dickerson* concerned a federal statute, enacted in the wake of the Court's *Miranda* decision, that provided that confessions were admissible as long as they were voluntarily made, regardless of whether *Miranda* warnings had been provided. 530 U.S. at 432; 18 U.S.C. § 3501. Whether the rule set forth in the statute was constitutionally permissible "turn[ed] on whether the *Miranda* Court [had] announced a constitutional rule"; if it had, Congress could not override that rule by statute. *Dickerson*, 530 U.S. at 437. The Court acknowledged that language in *Quarles*, *Tucker*, and other post-*Miranda* decisions could be read to support the view that *Miranda* warnings were not constitutionally required. *Id.* at 437–38. But the *Dickerson* Court ultimately concluded that *Miranda* was "a constitutional decision" that Congress

could not overrule.  *Id.* at 438–39; *see also id.* at 440 & n.5 (describing *Miranda* as "constitutionally based" and as having "constitutional underpinnings").  Accordingly, the *Dickerson* Court invalidated § 3501. *Id.* at 443–44.

*Dickerson* strongly supports Tekoh's argument that a plaintiff may bring a § 1983 claim predicated on a *Miranda* violation when the un-*Mirandized* statement is used against him in criminal proceedings.  Section 1983 permits suits for damages to vindicate "rights, privileges, or immunities secured by the Constitution."  Because *Dickerson* made clear that the right of a criminal defendant against having an un-*Mirandized* statement introduced in the prosecution's case in chief is indeed a right secured by the Constitution, we conclude that Tekoh has a claim that his Fifth Amendment right against self-incrimination was violated.

## B.

This clear view of the constitutional nature of *Miranda* warnings was later muddied by *United States v. Patane*, 542 U.S. 630 (2004), and *Chavez v. Martinez*, 538 U.S. 760 (2003).  In *Patane*, the Court held, in a fractured decision, that the Constitution did not require suppression of physical evidence found as a result of an interrogation that violated *Miranda*—*i.e.*, the "physical fruits" of a *Miranda* violation. 542 U.S. at 633–34.  Writing for the four-Justice plurality, Justice Thomas described the *Miranda* rule as "sweep[ing] beyond the actual protections of the Self-Incrimination Clause."  *Id.* at 639.  He further concluded that a constitutional violation based on a failure to give *Miranda* warnings could not occur, if at all, until the unwarned statements were admitted at trial, at which point the exclusion of the statements themselves would be a "complete and sufficient remedy" for the violation.  *Id.* at 641–42 (quoting *Chavez*, 538 U.S. at 790 (Kennedy, J.,

concurring)).  However, Justice Kennedy, joined by Justice O'Connor, concurred in the judgment on narrower grounds, holding only that the suppression of physical evidence was not required by the Fifth Amendment because it "does not run the risk of admitting into trial an accused's coerced incriminating statements against himself."  *Id*. at 645 (Kennedy, J., concurring).  Neither justice joined the plurality's broader discussion of *Miranda* as sweeping beyond the protection of the Fifth Amendment.

Previously, in *Chavez*, the Supreme Court had confronted the question of whether a plaintiff could sue under § 1983 for an officer's failure to give *Miranda* warnings when the plaintiff was not charged with a crime, and, therefore, his un-*Mirandized* statements were never used against him in criminal proceedings.  *See* 538 U.S. at 764–65 (plurality opinion).  In a fractured decision consisting of six separate opinions, none of which garnered a majority on anything but the judgment, the Court held that such claims are not viable.

Specifically, Justice Thomas's plurality opinion in *Chavez* concluded that a "criminal case" requires, at the very least, "the initiation of legal proceedings," and that because no proceedings had been brought against the plaintiff, he had not suffered a Fifth Amendment violation.  538 U.S. at 766. Having reached this conclusion, which alone was enough to resolve the case, the plurality nevertheless continued on to discuss *Miranda*.  Citing *Elstad*, *Tucker* and other pre-*Dickerson* cases, the plurality characterized the requirement of *Miranda* warnings as a "prophylactic rule[] designed to safeguard the core constitutional right protected by the Self-Incrimination Clause," *id*. at 770, repeating the points made by Justice Scalia, whose dissent in *Dickerson* was joined by Justice Thomas.  530 U.S. at 447 (Scalia, J., dissenting).  The

*Chavez* plurality explained that violations of "judicially crafted prophylactic rules do not violate the constitutional rights of any person" and therefore "cannot be grounds for a § 1983 action." 538 U.S. at 772.

The specific holding in *Chavez* does not govern Tekoh's case because unlike the plaintiff in *Chavez*, Tekoh's un-*Mirandized* statements were used against him in criminal proceedings. But the district court read *Chavez* to stand for the broader proposition that a § 1983 claim can never be grounded on a *Miranda* violation. In adopting this reading of *Chavez*, the district court treated Justice Thomas's plurality opinion of four Justices as supplying the controlling precedent here.

The district court went astray by doing so. In *United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016), our court, sitting en banc, examined the question of what rule our court was bound to apply when construing fractured Supreme Court decisions. Addressing the guidelines laid out in *Marks v. United States*, 430 U.S. 188, 193 (1977), we held that a fractured Supreme Court decision "only bind[s] the federal courts of appeal when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other. When no single rationale commands a majority of the Court, only the specific result is binding on lower federal courts." *Davis*, 825 F.3d at 1021–22. In sum, we concluded that "*Marks* instructs us to consider the opinions only of 'those Members who *concurred* in the judgments on the narrowest grounds' when deriving a rule from a fractured Supreme Court decision." *Id*. at 1024 (quoting *Marks*, 430 U.S. at 193).

Applying *Davis* to *Patane* is straightforward. Even though Justice Thomas's plurality opinion spoke broadly about the relationship between *Miranda* and the Fifth

Amendment, Justice Kennedy's concurring opinion was both necessary to the judgment and narrowly focused on the distinction between physical evidence and un-*Mirandized* statements. *Patane*, 52 U.S. at 633–45. Critically, Justice Kennedy's opinion did not echo the plurality's broader discussion of *Miranda*, and it thus controls. *Davis*, 825 F.3d at 1021–22.

While applying *Davis* to *Chavez* is less straightforward, we conclude that none of the six opinions provides a binding rationale. *See Stoot v. City of Everett*, 582 F.3d 910, 923 (9th Cir. 2009). Justice Thomas's plurality opinion, which reasoned in dicta that damages were unavailable for *Miranda* violations, did not command support from five Justices and was based on a rationale significantly broader than those of the concurring Justices. *See Marks*, 430 U.S. at 193. Thus, contrary to the district court's conclusion, the broad principles in Justice Thomas's opinion are not binding here.

None of the other opinions in *Chavez* articulates a principle directly applicable to the facts presented here. Justice Kennedy's opinion was a dissent on the Fifth Amendment claim because he would have affirmed, while the plurality opinion reversed. 538 U.S. at 799.**[6]** And while Justice Kennedy's concurring opinion suggests that exclusion "is a complete and sufficient remedy" for *Miranda* violations, it assumes that the exclusion of "unwarned statements" is available as a remedy. 538 U.S. at 790 (Kennedy, J., concurring). Justice Kennedy's opinion thus

---

**[6]** In *Davis*, we left open the question whether we can consider dissents in applying *Marks*. 825 F.3d at 1025; *see also id.* at 1028–30 (Christen, J., concurring) (five judges concurring in the view that *Marks*, on its face, limits review to "the opinions of 'those Members [of the Court] *who concurred in the judgments*'" (quoting *Marks*, 430 U.S. at 193)).

does *not* speak to Tekoh's plight, where exclusion is not available as a remedy because the un-*Mirandized* statements were already used against him in his criminal trial. Exclusion, here, is neither complete nor sufficient.

On the other hand, Justice Souter's concurring opinion, joined by Justice Breyer, expressly noted that "[t]he question whether the absence of *Miranda* warnings may be a basis for a § 1983 action under any circumstance is not before the Court." *Id.* at 779 n.* (Souter, J., concurring).

"When, [as in *Chavez*], no 'common denominator of the Court's reasoning' exists, we are bound only by [and only apply] the 'specific result.'" *Davis*, 825 F.3d at 1028. Here, the "specific result" from *Chavez* does not and cannot apply to Tekoh's particular circumstances because his un-*Mirandized* statement was admitted in his criminal trial, obviating exclusion as a remedy. Under our holding in *Davis*, Justice Thomas's plurality in *Chavez* therefore cannot control. Thus, we are left with *Dickerson* for guidance, which, as previously discussed, leads us to conclude that the use of an un-*Mirandized* statement against a defendant in a criminal proceeding violates the Fifth Amendment and may support a § 1983 claim.[7]

Our own decisions post-*Patane* and *Chavez* further support this conclusion. In *Stoot*, we held that plaintiffs could bring a § 1983 claim based on an officer's extraction of a coerced confession that was "relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody

---

[7] *Chavez* clearly stands for the proposition that merely taking a statement without *Miranda* warnings is insufficient to give rise to a § 1983 claim. *Chavez*, 538 U.S. at 767.

status." 582 F.3d at 925. Although we did not consider the specific *Miranda* question presented here, we examined the various opinions in *Chavez* and interpreted them in a manner consistent with our interpretation here. *See id.* at 922–24; *see also Crowe v. Cty. of San Diego*, 608 F.3d 406, 429–31 (9th Cir. 2010). And in *Jackson v. Barnes*, 749 F.3d 755, 762, 767 (2014), we held that a plaintiff could bring a § 1983 suit against an officer for obtaining an un-*Mirandized* statement that was later used against him at his criminal trial, as well as against a police department for failing to supervise officers who routinely fail to give *Miranda* warnings.

Several of our sister circuits have also distinguished *Chavez*, agreeing that the use of statements obtained in violation of the Fifth Amendment against a defendant at his criminal trial may give rise to a § 1983 claim. *See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1023–27 (7th Cir. 2006); *Burrell v. Virginia*, 395 F.3d 508, 513–14 (4th Cir. 2005) (holding that the plaintiff's failure to "allege any *trial* action that violated his Fifth Amendment rights" barred recovery under § 1983) (emphasis added); *Murray v. Earle*, 405 F.3d 278, 285 & n.11 (5th Cir. 2005); *id.* at 289–90 (holding that the use of an "involuntary statement" against a criminal defendant at trial could give rise to a § 1983 action); *Renda v. King*, 347 F.3d 550, 552, 557–59 (3d Cir. 2003) (recognizing that *Chavez* "leaves open the issue of when a statement is used at a criminal proceeding").

We therefore also reject the Eighth Circuit's approach in *Hannon v. Sanner*, in which the court interpreted *Dickerson* together with *Chavez* to hold that a *Miranda* violation cannot form the basis of a § 1983 claim because "the *Miranda* procedural safeguards are 'not themselves rights protected by the Constitution.'" 441 F.3d 635, 636–38 (8th Cir. 2006) (quoting *Tucker*, 417 U.S. at 444). In *Hannon*, the court

described *Dickerson* as "maintaining the status quo of the *Miranda* doctrine," such that it remained bound by pre-*Dickerson* circuit precedent that treated *Miranda* as a prophylactic rule that swept more broadly than the Fifth Amendment. *Id.* at 636–37 (citing *Warren v. City of Lincoln*, 864 F.2d 1436, 1442 (8th Cir. 1989) (en banc) and *Brock v. Logan Cty. Sheriff's Dep't*, 3 F.3d 1215, 1217 (8th Cir. 1993) (per curiam)). In light of *Dickerson's* express holding, however, this cannot be correct. In *Dickerson*, the Supreme Court in no way maintained the status quo; in fact, it affirmatively backed away from previous decisions like *Quarles* and *Tucker* that had described *Miranda* warnings as merely prophylactic and "not themselves rights protected by the Constitution," the very cases *Hannon* relied upon. 530 U.S. at 437–39 (quoting *Tucker*, 417 U.S. at 444). Finding *Hannon* unpersuasive, we conclude that the use of an un-*Mirandized* statement against a defendant in a criminal proceeding violates the Fifth Amendment and may support a § 1983 claim.

## C.

To hold Deputy Vega liable under § 1983 for violating Tekoh's Fifth Amendment rights, Tekoh must also prove that his un-*Mirandized* statements were used against him and that Deputy Vega caused the violation of his right against self-incrimination. While the question of liability is ultimately for the jury to decide, we conclude that Tekoh sufficiently demonstrated a Fifth Amendment violation caused by Deputy Vega under § 1983, such that the district court erred by failing to instruct the jury on this claim.[8]

---

[8] A district court errs "when it rejects proposed jury instructions that are properly supported by the law and the evidence." *Clem v. Lomeli*,

Here, there is no question that Tekoh's statement was used against him. The statement was introduced into evidence in the failed state criminal prosecution of him. *See Stoot*, 582 F.3d at 914–16; *see also Sornberger*, 434 F.3d at 1026–27 (holding that where "a suspect's criminal prosecution was . . . commenced *because* of her allegedly un-warned confession, the 'criminal case' contemplated by the Self-Incrimination Clause has begun").[9]

There is also no question that Deputy Vega "caused" the introduction of the statements at Tekoh's criminal trial even though Vega himself was not the prosecutor. In *Stoot*, we held that a plaintiff may assert a Fifth Amendment violation against the officer who interrogated him and then included the coerced statements in the police report. 582 F.3d at 926. We explained that "government officials, like other defendants, are generally responsible for the 'natural' or 'reasonably foreseeable' consequences of their actions." *Id.* (quoting *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007)). Joining other circuits, we held that, absent unusual circumstances, such as evidence that the officer "attempted to prevent the use of the allegedly incriminating statements . . . or that he never turned the statements over to the prosecutor in the first place," *id.* at 926 (quoting *McKinley v. City of Mansfield*, 404 F.3d 418, 439 (6th Cir. 2005)), a police officer who elicits incriminating statements from a criminal suspect can reasonably foresee that the statements

---

566 F.3d 1177, 1181 (9th Cir. 2009) (citing *Dang v. Cross*, 422 F.3d 800, 804–05 (9th Cir. 2005)).

[9] Because we do not address the circumstances present in *Sornberger*, where an un-*Mirandized* statement was used against the defendant in the commencement of her criminal prosecution but where charges were dropped prior to trial, we do not decide whether such facts could give rise to a claim for damages under § 1983. *Id.*

will be used against the suspect in a criminal case, *id.* (citing *Higazy*, 505 F.3d at 177); *see also id.* at 927 ("[O]rdinarily, 'in actions brought under § 1983 for alleged violations of [the Fifth Amendment], it is the person who wrongfully coerces or otherwise induces the involuntary statement who causes the violation of the [Fifth Amendment] privilege.'" (quoting *McKinley*, 404 F.3d at 439)).

Similarly, here, although it was the prosecutors who used Tekoh's statements at his criminal trial, it was Deputy Vega who interrogated Tekoh, prepared the incident report, and personally signed the probable cause declaration. In those documents, Vega stated that Tekoh was a suspect, that he arrested Tekoh for the charge of "Sexual Penetration by Foreign Object," and that Tekoh's incriminating statements were the basis for the report and the probable cause determination. As a result, a jury could infer that the subsequent introduction of the statements in Tekoh's criminal trial was the reasonably foreseeable consequence of Deputy Vega's conduct. *See Stoot*, 582 F.3d at 926 ("[A] jury could infer that the subsequent uses of the statements to file criminal charges against [the suspect] and to set conditions for his release at arraignment were reasonably foreseeable consequences of [the interrogating officer's] conduct.").

We do not hold that taking an *un-Mirandized* statement always gives rise to a § 1983 action. We hold only that where government officials introduce an un-*Mirandized* statement to prove a criminal charge at a criminal trial against a defendant, a § 1983 claim may lie against the officer who took the statement.[10] By contrast, in cases like

---

[10] This holding is not inconsistent with our prior holding in *Fortson v. L.A. City Atty's Office*, 852 F.3d 1190, 1192, 1194–95 (9th Cir. 2017).

*Chavez*, where the suspect was never charged, or where police coerce a statement but do not rely on that statement to file formal charges, the Fifth Amendment is not implicated. *See Stoot,* 582 F.3d at 925 n.15 (citing *Chavez*, 538 U.S. at 778–79).

## D.

Therefore, the district court erred by giving the coerced confession instruction, rather than instructing on the *Miranda* violation alone.[11] The giving of solely the coerced confession instruction was not harmless. "[W]e 'presume prejudice where civil trial error is concerned.'" *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (quoting *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005)). Deputy Vega bears the burden of demonstrating "that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Id.* Deputy Vega has not met that burden.

First, to establish a *Miranda* violation, Tekoh need only demonstrate that he was "in custody" when he was

---

In *Fortson*, we cited *Chavez* for the proposition that "failure to give *Miranda* warnings does not create liability in a civil rights action." *Id.* at 1194–95. This reliance on *Chavez*, however, is limited to *Chavez*'s binding result that a mere failure to read *Miranda* warnings does not give rise to a claim under § 1983. *See id.* at 1192 (explaining that Fortson's *Miranda* claim was based on the defendants' failure to read him his *Miranda* warnings, but nothing more). The plaintiff's situation in *Fortson*, like in *Chavez*, is distinguishable from Tekoh's claim because there was no indication that the *Fortson* plaintiff's un-*Mirandized* statements were used against him in a subsequent criminal case.

[11] Of course, if the jury believes Deputy Vega's version of events, it could conclude that Tekoh was not "in custody," and thus *Miranda* warnings were not required, in which case Deputy Vega would prevail.

questioned by Deputy Vega without *Miranda* warnings. *Miranda*, 384 U.S. at 445.  The district court instead required Tekoh to prove "that the confession or statement was improperly coerced and not voluntary" and that Vega "acted intentionally in obtaining that coerced confession or statement,"—a more difficult showing that effectively added two elements to Tekoh's claim.  We have previously recognized that when a court improperly requires an extra element for a plaintiff's burden of proof, the error is unlikely to be harmless.  *Clem*, 566 F.3d at 1182 (quoting *Caballero v. City of Concord*, 956 F.2d 204, 207 (9th Cir. 1992)).

Second, we cannot presume that the jury would have found that Tekoh was not in custody if it had been properly instructed on Tekoh's *Miranda* claim.  As Deputy Vega concedes, whether Tekoh was in custody involved a disputed question of fact that turned on "credibility determinations that an appellate court is in no position to make." *Caballero*, 956 F.2d at 207; *see also id.* ("In reviewing a civil jury instruction for harmless error, the prevailing party is not entitled to have disputed factual questions resolved in his favor[.]").

Furthermore, we simply do not—and cannot—know what the jury found as to the question of custody.  The district court erroneously instructed the jury to assess whether Tekoh was coerced under a totality-of-the-circumstances test, under which the *Miranda* violation was one of seven factors.  Thus, it was entirely possible for the jury to find that Tekoh was in custody for *Miranda* violation purposes, but still ultimately conclude that Deputy Vega's questioning did not rise to the level of coercion—a significantly higher standard.  *See*, *e.g., Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002) (holding that the detective's questioning of the defendant violated *Miranda*

but "did not amount to coercion or compulsion"); *Carpenter v. Chappell*, No. C 00-3706 MMC, 2013 WL 4605362, at *15–16 (N.D. Cal. Aug. 26, 2013) (same); *United States v. Betters*, 229 F. Supp. 2d 1103, 1108 (D. Or. 2002) (same). Indeed, Deputy Vega's testimony supported Tekoh's claim that he was not free to leave during the interrogation.

Therefore, we cannot conclude "that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Clem*, 566 F.3d at 1182 (citation omitted). Because we do not believe that Deputy Vega has made such a showing, the error was not harmless. We thus vacate the judgment on the jury's verdict and remand the case for a new trial, in which the jury must be properly instructed that the introduction of a defendant's un-*Mirandized* statement at his criminal trial during the prosecution's case in chief alone is sufficient to establish a Fifth Amendment violation.

## IV.

Because we remand for a new trial, we need not reach the question of whether the district court abused its discretion by excluding the testimony of Tekoh's coerced confession expert, Dr. Blandon-Gitlin. On remand, we leave it to the district court to consider whether the expert should be permitted to testify given the questions that remain.

## V.

We vacate the judgment on the jury's verdict, reverse the district court's judgment as to Tekoh's requested jury instruction, and remand the case for a new trial, in which the jury must be properly instructed that the introduction of a defendant's un-*Mirandized* statement at his criminal trial during the prosecution's case in chief is alone sufficient to

establish a Fifth Amendment violation and give rise to a § 1983 claim for damages.  The parties shall bear their own costs of appeal.

**VACATED; REVERSED AND REMANDED**